331 A.2d 213
COMMONWEALTH of Pennsylvania
v.
Gary B. BLAIR, Appellant.
Supreme Court of Pennsylvania.
Argued Nov. 20, 1974.
Decided Jan. 27, 1975.

32

Martin R. Fountain, Philadelphia, for appellant.

William P. Boland, Asst. Dist. Atty., Mark Sendrow, Asst. Dist. Atty., Asst. Chief, Appeals Div., Abraham J. Gafni, Deputy Dist. Atty. for Law, F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., C. Temin, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant, Gary Blair, was arrested on July 26, 1972, and charged with the murder of one Willie Lee Edwards. Blair's first trial commenced on April 23, 1973, and ended in a mistrial when the jury informed the trial court that it was unable to reach a verdict.

■ Appellant was retried before a jury in August, 1973. The jury convicted him of first degree murder and appellant was sentenced to life imprisonment. Post-trial motions were filed [1] and denied. This appeal ensued.[2] We affirm.

At appellant's second trial, one of the prosecution's key witnesses, appellant's girl friend, failed to appear. Consequently, the court permitted the witness's testimony at appellant's first trial to be read to the jury. Appellant asserts this was error.

1. Appellant's written post-trial motions were boiler plate challenges to the sufficiency of the evidence. Although counsel apparently made more specific oral motions that were considered by the court, the Pennsylvania Rules of Criminal Procedure, rule 1123(a), 19 P.S. Appendix, requires written post-trial motions.

The practice in some judicial districts of ignoring the requirements of Rule 1123(a) is condemned. Henceforth, issues not presented in compliance with the rule will not be considered by our trial and appellate courts.

2. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1974).

Under the Act of May 23, 1887, P.L. 158, § 3, 19 P.S. § 582 (1964),

"[w]henever any person has been examined as a witness, either for the commonwealth or for the defense, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, if such witness . . . cannot be found . . . . notes of his examination shall be competent evidence upon a subsequent trial of the same criminal issue . . . ."

Appellant alleges that the Commonwealth's efforts to obtain the witness's presence was inadequate and that the prosecution failed to establish that the witness "cannot be found." Therefore he asserts that it was error to read the record to the jury.

A witness "cannot be found," within the meaning of section 3 of the Act of May 23, 1887, only if a good-faith effort to locate the witness and compel his attendance at trial has failed. See *Commonwealth v. Faison*, 452 Pa. 137, 141, 305 A.2d 44, 46 (1973); *Commonwealth v. Beach*, 445 Pa. 257, 284 A.2d 792 (1971). Cf. *Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed. 2d 293 (1972); *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).

The record reveals that the following efforts were made to obtain the testimony of the witness. On August 7, 1973, during the selection of the jury for appellant's trial, the district attorney saw the witness in the courtroom and told her that she would receive a subpoena to appear at appellant's trial. At that time, she informed the district attorney that she would not appear.

On the same day, a detective attempted to serve the subpoena at the address the witness had given the officer investigating the murder. However, he discovered that the building at that address was abandoned. Later that day, the detective attempted to telephone the witness's mother but the call went unanswered.

The following day, the detective called at the home of the witness's mother. No one was home. The detective testified that he thought he slipped the subpoena under the door at that time.

The detective then checked with postal authorities to ascertain whether the witness had a forwarding address. He was informed that the postal service had received no information about a change of address.

Later that day, the detective contacted the witness's mother by telephone. He told her about the trial and instructed her to have her daughter call him. The next morning, the detective again telephoned the witness's mother but was informed that the mother had not seen her daughter.

On August 13, during appellant's trial, a bench warrant was issued for the witness and the detective, upon the court's instruction, attempted to serve it at the address the witness had given in her previous testimony. Once again, the witness could not be found and service could not be made.

Later that day, the court instructed the detective to maintain an all-night vigil at the witness's home. That night the detective talked to at least two persons who claimed to have recently seen the witness but who were unable to tell the detective of her present whereabouts. The detective also spoke with the witness's mother, who stated that her daughter had left the mother's home two weeks earlier. The mother said she had no knowledge where her daughter could be found. The officer searched the mother's home and did not find the witness, although he did find evidence that the witness had lived there. He then called at the home of the witness's stepbrother, but no one was home. Finally, he returned to the mother's home, searched it again and again failed to find the witness.

After hearing the testimony of the officer's efforts to locate the witness, the court concluded that the witness was "not available to testify personally and the Common-

wealth [had] exerted every possible effort to try and serve her." This conclusion is amply supported by the record.

Although the district attorney would have been better advised not to wait until appellant's trial began to attempt to secure the attendance of the witness, we cannot conclude that his delay vitiated the extensive efforts to find the witness. Nor can we conclude that the fact the witness had been recently seen in the neighborhood where she lived bars application of the statute. The Act does not require that the Commonwealth establish that the witness has disappeared from the face of the earth; it demands that the Commonwealth make a good-faith effort to locate the witness and fail. In the circumstances of this case, the Commonwealth established that a good-faith attempt was made to find the witness and that "the witness [could] not be found." We therefore hold that the court, in compliance with section 3 of the Act of May 23, 1887, properly permitted the witness's prior testimony to be read to the jury.[3]

Judgment of sentence affirmed.

JONES, C. J., did not participate in the consideration or decision of this case.

3. Appellant makes three other claims of error. None of these were properly preserved for appeal. Appellant first contends that the court improperly permitted testimony to be given on irrelevant issues. Next he asserts that the court's statement to the jury after the Commonwealth rested its case "that the next order of business will be for the defendant to present his defense," shifted the burden of proof from the Commonwealth. Finally, he contends that the testimony of the missing witness read to the jury was inadmissible because it was the fruit of a custodial interrogation of the witness by the police at which the police failed to give the witness *Miranda* warnings. At the time of these alleged errors, appellant failed to object. Therefore he may not raise these issues upon appeal. *Commonwealth v. Martinolich,* 456 Pa. 136, 160 n. 15, 318 A.2d 680, 693 n. 15 cert. denied 419 U.S. 1065, 95 S.Ct. 651, 42 L.Ed.2d 661 (1974); *Commonwealth v. Agie,* 449 Pa. 187, 296 A.2d 741 (1972).