359 A.2d 375
**COMMONWEALTH of Pennsylvania, Appellee,**
**v.**
**Clifton PALMER, Appellant (two cases).**

Supreme Court of Pennsylvania.
Argued Nov. 21, 1975.
Decided July 6, 1976.

---

Prather G. Randle, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Gaele Barthold, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

On April 27, 1974, Clifton Palmer, was convicted by a jury in Philadelphia of murder of the second degree, aggravated assault, violations of the firearms act, and possession of an instrument of crime and prohibited offensive weapon. Prison sentences were imposed on each conviction, the sentences to run concurrently. These appeals followed.[1]

1. The appeal from the murder conviction and sentence was filed in this Court. An appeal from the other convictions and sentences was filed in the Superior Court and later certified here.

Palmer asserts he is entitled to a new trial because of errors and deficiencies in the trial court's charge to the jury. An account of the evidence presented is thus necessitated.

From the Commonwealth's evidence, the jury could find the following:

On July 4, 1973, Eugene Ross and Herbert Halliday were residing at 2047 Indiana Avenue, Philadelphia, along with Mrs. Patricia Davis, the owner of the residence, her five children and her husband. On or about that date, Palmer began residing at the same residence. Animosity between Ross and Palmer developed during the period between July 4 and July 31, 1973 when the homicide here involved occurred.

In the early morning hours of July 31, 1973, an argument developed between Palmer and Ross over the presence of certain women at the residence. The next morning the argument continued and resulted in Palmer leaving the house.

Palmer then contacted Reginald Hamel, Andre Greene and Kevin Henderson in an effort to acquire a gun. Palmer's efforts were successful in that Henderson supplied him with a shotgun and ammunition. Palmer, Greene, Hamel and Henderson then drove to the general area of Palmer's residence. Palmer departed the vehicle and proceeded to the residence with the shotgun concealed in a guitar case.

Palmer, upon arriving in front of the house, called Ross, who was in the basement, and Ross came out and saw Palmer with the guitar case. Each beckoned to the other to come closer but Palmer walked in a "backward" manner away from Ross while at the same time watching him. Palmer crossed the street and continued to move backward as Ross moved toward him. Palmer then bumped into a small child and Ross helped the child to her feet as Palmer had backed further away. Palmer

reached a corner and moved around a car. Ross attempted to look around the corner when Palmer suddenly reappeared, opened the guitar case, pointed the shotgun at Ross, stated: "I'm not scared of you now . . ," and fired the weapon. As a result, Ross was wounded in the hand and a four-year-old child, Kelly J. Lane, who had been playing nearby, was fatally wounded. The testimony does not indicate whether Kelly Lane was the same child bumped into by Palmer and helped by Ross.

The defense testimony was as follows:

Ross, was not a resident of 2047 Indiana Avenue, but was only an occasional visitor and he was trained in karate. Because of this Palmer was both respectful and fearful of Ross's physical prowess. In the early morning hours of July 31, 1973, the argument over the presence of the women at the residence had resulted in a fight. The argument later that morning also resulted in a fight during which Ross kicked Palmer and thereby drove him across part of a room into a wall. Palmer complained to Mrs. Davis but to no avail. Following the complaint, the argument continued and Palmer departed the house after repeated threats by Ross which included a threat to kill Palmer if he returned. Palmer departed only because of the threat and a fear of Ross.

Palmer later returned to the residence only to acquire his clothing. He hoped Ross would not be present and had acquired the shotgun only to insure his own safety from Ross in the event he was still at the residence and attempted to carry out his threat.

Upon reaching the front of the house, Palmer asked Mrs. Davis, who was sitting on the porch, if Ross was there. Mrs. Davis called Ross and when he appeared Palmer began moving away from the residence. Palmer tried to avoid Ross, but Ross continued to pursue him. Palmer began running to avoid Ross. As Palmer attempted to run around a corner, he tripped and ran into

a parked car because he had his shoes on in a "flip-flop" manner. The guitar case which Palmer was carrying opened as a result of the impact, and Palmer grabbed the shotgun because Ross was now so close to him that he considered himself cornered and unable to flee.[2] Palmer pointed the shotgun at Ross and warned him not to approach. Ross continued to approach, raised his hand to strike Palmer, and Palmer shot at him.

Palmer further testified he had not attempted to kill Ross. He also said he knew how to use a shotgun and Ross was sufficiently close that he could have killed him but he had intentionally not pointed the gun straight at Ross. Finally, Palmer testified he did not know a young child had been shot when he fled the scene and would not have discharged the weapon had he known the child was in the vicinity.

In charging the jury on self-defense, the trial court instructed:

"Let us discuss self-defense in more detail. If someone acts in self-defense but only as permitted by law and only if he meets certain standards prescribed by law, and if he kills another while acting in self-defense, you can find him not guilty of the crime of murder. Now, let us analyze what the statute says. If a person reasonably believes under all of the circumstances that he is in danger of death or serious bodily harm at the hands of another, the law permits him to kill if necessary such other person to protect himself from death or serious bodily harm. However, the belief that death or serious bodily harm is about to be caused to him must be a reasonable belief under all of the circumstances, and the one claiming self-defense must show that he retreated *unless he is excused from retreating by showing that retreat was not possible*

2. Although Palmer indicated a distance between himself and another object in the courtroom as representing the distance between himself and Ross, the distance in feet between Palmer and the object is not indicated in the record.

*and would not have saved him from death or serious bodily harm."* [Emphasis supplied.]

Palmer asserts this charge was erroneous because it required retreat by Palmer if in fact an avenue of retreat remained open and that under the law of Pennsylvania, Palmer need not have retreated if he reasonably believed no avenue of retreat remained open to him. The Commonwealth asserts the trial court's instruction was a correct statement of the law.[3] We do not agree the charge as given is a correct statement of the applicable law and therefore reverse and order a new trial.[4]

 The use of deadly force in protection of self is justifiable where certain requirements are met, Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 C.P.S.A. § 505(a) and (b)(2) [effective date June 6, 1973] [Hereinafter: 18 C.P.S.A.], but such use of force is disallowed, even though it is otherwise allowable because such requirements are met, where

"The [defendant] *knows* he can avoid the necessity of using such force with complete safety by retreating . . .." [Emphasis supplied.]

**3.** The Commonwealth does not argue that Palmer has not properly preserved this specific issue by a specific exception or objection or by requesting a point for charge, *Commonwealth v. Williams*, 463 Pa. 370, 344 A.2d 877 (1975); *Commonwealth v. Mitchell*, 460 Pa. 665, 334 A.2d 285 (1974); *Commonwealth v. Sisak*, 436 Pa. 262, 259 A.2d 428 (1974); nor does the Commonwealth argue that the issue has not been properly preserved post-trial, *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975); *Commonwealth v. Bailey*, 463 Pa. 343, 344 A.2d 869 (1975). Moreover, Palmer's requested points for charge included the following, which should have indicated that the standard for excusing Palmer from retreating was in dispute:
"In order to justify killing in self-defense, defendant, Clifton Palmer, must have reasonably believed that he had no other means of escape from death or great bodily harm."
See *Commonwealth v. Williams*, supra. Finally, the record establishes this issue was raised post-trial. See *Commonwealth v. Blair*, supra; *Commonwealth v. Bailey*, supra.

**4.** Since we grant Palmer a new trial because of error in this portion of the charge, we need not discuss the remaining assignments of error.

18 C.P.S.A. § 505(b)(2)(ii). Thus, the use of deadly force, otherwise allowable, is disallowed only where the defendant *knows* an avenue of retreat is available.

█ As applied instantly, if Palmer believed he was "cornered" or without an avenue of retreat, it necessarily follows that he did not know an avenue of retreat was available and thus, he would have been excused from retreating and justified in using deadly force if the other requirements were present. However, according to the trial court's instructions if an avenue of retreat in fact existed, Palmer would have had the duty to retreat even though he did not know such an avenue of retreat was available. The jury under the testimony may have believed retreat was in fact available and still have believed Palmer did not know it was because he believed it was not. As such, the jury may have disallowed the justifiable use of deadly force by Palmer by applying an improper standard.

The judgments of sentence imposed on the convictions for murder of the second degree and aggravated assault are, therefore, reversed and a new trial is ordered.

The judgments of sentence imposed on the convictions for violations of the firearms act and possession of an instrument of crime and prohibited offensive weapon are affirmed.[5]

JONES, C. J., and ROBERTS, J., took no part in the consideration or decision of this case.

POMEROY, J., filed a concurring opinion.

5. In this appeal, Palmer has asserted errors and deficiencies in the trial court's charge relating to the use of force and its effect on the convictions for murder of the second degree and aggravated assault. No assignment of error which would effect the convictions for violations of the firearms act and possession of an instrument of crime and prohibited offensive weapon has been asserted. We, therefore, affirm the judgments of sentence imposed on those convictions.

POMEROY, Justice (concurring).

I concur in the decision of the Court granting appellant a new trial. This separate opinion is appended merely to suggest additional support for the majority's holding.

The trial court charged in this case that "one claiming self-defense must show that retreat was not possible and would not have saved him from death or serious bodily harm." It is clear that this charge required the defendant to negate completely the possibility of retreat in order to establish that he was acting in self-defense. As the majority indicates, however, under the Crimes Code there is no duty to retreat unless the actor "knows" that he can avoid the necessity of using deadly force with complete safety by so doing; thus the defendant must be shown to "know" of an avenue of retreat if the defense of self-defense is to be negated for failure to retreat. 18 Pa.C.S. § 505(b)(2)(ii). Section 302 of the Crimes Code states that

"(2) *A person acts knowingly* with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, *he is aware* that his conduct is of that nature of that *such circumstances exist;*"

18 Pa.C.S. § 302 (emphasis added). I believe that this standard of actual awareness must be applied to determine whether the Commonwealth has met its burden of proof in regard to the defendant's knowledge of his ability to retreat,* and that the court erred in this case in instructing the jury that the defendant must show that "retreat was not possible."

---

* Under the Crimes Code, the Commonwealth bears the burden of proving beyond a reasonable doubt that a killing was not in self-defense once the defense has been raised. *Commonwealth v. Cropper,* 463 Pa. 529, 345 A.2d 645 (1975).