380 A.2d 765

**COMMONWEALTH of Pennsylvania**

**v.**

**Calvin DIXON, Appellant (four cases).**

Supreme Court of Pennsylvania.

Dec. 1, 1977.

Elias B. Landau, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Jane C. Greenspan, Philadelphia, for appellee.

## OPINION OF THE COURT

O'BRIEN, Justice.

On March 24, 1972, appellant, Calvin Dixon, was convicted by a judge sitting with a jury of murder of the second degree and conspiracy in connection with the homicide of Reginald Fairbrough. Postverdict motions were denied on October 25, 1972, and appellant was sentenced to seven and one-half to fifteen years imprisonment on the murder-of-the-second-degree conviction, and a consecutive one-to-two-year sentence on the conspiracy conviction.

In November of 1972, appellant filed a *pro se* direct appeal to this court from the murder conviction. After filing the appeal, appellant retained appellate counsel different from trial defense counsel.

On November 30, 1973, appellant's *pro se* appeal to this court was *nol prossed.* On March 14, 1975, appellant filed a *pro se* Post Conviction Hearing Act Petition. In April of 1975, present appellate counsel was appointed to assist appellant in pursuing that petition.

On November 5, 1975, appellant was granted the right to appeal *nunc pro tunc* to this court; all other post-conviction relief was denied.[1] The basis for granting appellant the right to appeal *nunc pro tunc* was that the initial appellate counsel failed to pursue the 1972 direct appeal. On November 20, 1975, appellant filed a *nunc pro tunc* direct appeal in this court from the murder conviction (No. 141) and he also filed a direct appeal from the denial of additional Post Conviction Hearing Act relief (No. 142).

On December 2, 1975, appellant filed two appeals in the Superior Court. Appeal No. 171 was the *nunc pro tunc* appeal on the conspiracy conviction and appeal No. 172 was from the denial of Post Conviction Hearing Act relief as it related to the conspiracy conviction. On December 9, 1975,

---

1. This procedure of a Post Conviction Hearing Act court in deciding the merits of substantive claims after granting the right to appeal *nunc pro tunc* is disapproved. See *Commonwealth v. Webster,* 466 Pa. 314, 353 A.2d 372 (1976).

the Superior Court certified appeals Nos. 171 and 172 to this court for disposition with the direct appeals from the murder conviction and denial of post-conviction relief.

For purposes of discussion, we will treat the *nunc pro tunc* direct appeals to this court at No. 141 and the Superior Court at No. 171 separately from the appeal to this court at No. 142 and the appeal to the Superior Court at No. 172 from the Post Conviction Hearing Act order denying additional relief.

## APPEALS Nos. 141 and 171

Appellant argues that the suppression court erred in failing to suppress his oral statements for failure to give the proper *Miranda* warnings. We agree.

In *Commonwealth v. Riggins*, 451 Pa. 519, 304 A.2d 473 (1973), we reiterated our scope of review in determining the correctness of a suppression court's order:

"Our task on review, . . . [of a suppression hearing] is to consider only 'the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.' *Culombe v. Connecticut*, 367 U.S. [568] at 604, 81 S.Ct. 1860, 6 L.Ed.2d 1037." *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 149–50, 239 A.2d 426, 430 (1968).

Using the above standard, the facts of the instant case are as follows.

On Wednesday, October 28, 1970, at 10:25 p. m., approximately five hours after the homicide, appellant, Calvin Dixon, was arrested at his home in Philadelphia. The police officers informed appellant that he was wanted in connection with a shooting that occurred at Marshall and Master Streets in Philadelphia. Appellant was then taken to the Police Administration Building. He was first questioned at 11:35 p. m. by Officers Lyons, Thornhill and Thornton in Room 103 of the Police Administration Building. The police informed appellant of his constitutional rights; he waived his constitutional rights. During the ensuing interview,

appellant denied any involvement or knowledge concerning the shooting. This interview ended at 12:00 Midnight. At 12:25 a. m., appellant was confronted by Wayne Fambrough, brother of the decedent, and an eyewitness to the shooting. At 12:30 a. m., Rodney Fambrough, also a brother of the decedent and an eyewitness to the shooting, was taken into the interrogation room to confront appellant. Both brothers identified appellant. At neither time was appellant warned of his constitutional rights.

At 2:00 a. m., the police resumed appellant's interrogation. No *Miranda* warnings were given. Appellant continued to deny any involvement in or knowledge of the shooting. He was offered a meal at 2:30 a. m., which he refused. At 2:40 a. m. appellant was taken to the polygraph examination room. During the pretest examination, the polygraph operator, Officer Torphy, asked appellant if he knew anything about the Fambrough shooting. For the first time, appellant admitted knowledge of and possible complicity in the shooting. The polygraph operator then told him that in order to conduct the test, appellant would have to further explain all circumstances surrounding the homicide. The operator then testified that appellant stated:

"We went down to Marshall Street, a party named Dirk, a J. B., himself and another person that he didn't know. He said J. B. had the shotgun. When they went down there on Marshall Street, he stated that Dirk and himself stayed in the middle of the block and J. B. and the other fellow went down. He stated J. B. fired the shotgun. After the shooting, they ran. He stated he ran with Dirk—"

No *Miranda* warnings were given prior to the above statements. The polygraph examination and interview ended at 5:10 a. m. At 5:10 a. m. appellant was returned to Room 103, the interrogation room, where he gave another inculpatory statement to Officers Thornton and Thornhill. Again no *Miranda* warnings were given appellant. He was left alone until 8:10 a. m., when he was interviewed by Officer Lyons, during which interview he again admitted his presence at the scene of the homicide. No *Miranda* warnings

preceded the 8:10 interview. Appellant was reinterviewed at 1:40 p. m. The substance of his statement continued to be that he was present but he did not do the shooting.

At 7:30 p. m., appellant was rewarned of his constitutional rights, which he waived, and proceeded to sign a formal typewritten confession. This formal statement ended at 9:55 p. m. The suppression court, acting upon appellant's motion to suppress, determined that the oral statements of 2:40 a. m. and 8:10 a. m., were voluntary and admissible but the formal written confession was involuntary, given the totality of the circumstances and was, therefore, inadmissible. The suppression court finding of facts and order did not mention the 5:10 a. m. statement. Appellant now argues that the suppression court erred in failing to suppress the oral statements given at 2:40, 5:10 and 8:10 a. m. because of the failure to rewarn appellant of his constitutional rights. We agree.

In *Commonwealth v. Riggins, supra,* this court discussed the factors necessary to determine whether a defendant must be rewarned of his constitutional rights:

"Our determination to suppress is further supported by *Commonwealth v. Bennett,* 445 Pa. 8, 282 A.2d 276 (1971). There, this Court held:

" 'There is no prophylactic rule that a suspect must be rewarned of his constitutional rights each time custodial interrogation is renewed. Instead, we must view the totality of circumstances in each case to determine whether such repeated warnings are necessary. *Commonwealth v. Ferguson,* 444 Pa. 478, 282 A.2d 378 (1971); *Commonwealth v. Abrams,* 443 Pa. 295, 278 A.2d 902 (1971). See also *United States v. Osterburg,* 423 F.2d 704 (9th Cir. 1970); *Brown v. State,* 6 Md.App. 564, 252 A.2d 272 (1969); *Franklin v. State,* 6 Md.App. 572, 252 A.2d 487 (1969).

" '*Pertinent to such an inquiry are the length of time between the warnings and the challenged interrogation, whether the interrogation was conducted at the same place where the warnings were given, whether the officer who gave the warnings also conducted the questioning,*

*and whether statements obtained are materially different from other statements that may have been made at the time of the warnings.'* Bennett, supra 445 Pa. at 15, 282 A.2d at 280 (emphasis added)."

See *Commonwealth v. Wideman,* 460 Pa. 699, 334 A.2d 594 (1975).

█ The next step of inquiry is to apply the criteria in *Bennett* and *Riggins* to the instant facts.

A. The length of time between the warning and the challenged interrogation.

█ Appellant was first warned of his constitutional rights at 11:35 p. m. Appellant's first "unwarned" oral statement began at 2:40 a. m., approximately three hours after his initial warning. Appellant's second unwarned oral statement began at 5:10 a. m., approximately five and one-half hours after the initial warnings. Appellant's last unwarned oral statement began at 8:10 a. m., eight and one-half hours after the initial *Miranda* warnings were given.

B. Whether the interrogation was conducted at the same place that the warnings were given.

Appellant's initial *Miranda* warnings were given in Room 103 of the Police Administration Building. The 2:40 a. m. oral statement was given by appellant in the polygraph testing area of the Police Administration Building. Both the 5:10 a. m. and 8:10 a. m. statements were given in Room 103, the site of the initial warnings.

C. Whether the officer who gave the warnings also conducted the questioning.

Appellant was initially warned by Officers Lyons, Thornhill and Thornton. The 2:40 a. m. statement was given to Officer Torphy, the polygraph operator. The 5:10 a. m. statement was given in the presence of Officers Thornton and Thornhill, two of the original "warning" officers. The 8:10 a. m. interview was conducted by Detective Lyons, one of the original "warning" officers.

D. Whether statements obtained are materially different from other statements that may have been made at the time of the warnings.

Appellant's initial response to police questioning at 11:35 p. m., after warnings were given, was a denial of any knowledge or involvement in the homicide. His response to subsequent police questioning, without additional warnings being given at 2:40 a. m., 5:10 a. m. and 8:10 a. m., were that he admitted being with the gang that committed the homicide.

Applying the above criteria to the instant facts, we are of the opinion that the police were required to rewarn appellant of his *Miranda* rights prior to each of the three oral statements. The 2:40 a. m. statement, while being given three hours after the initial warnings, was made to a police polygraph officer in the polygraph testing room during a pretest questioning period. The statement was given in response to a statement by the polygraph operator that appellant must tell if he knew something about the homicide in order for the test to be conducted. Appellant for the first time affirmatively responded. The polygraph operator was not one of the original "warning" officers. Therefore, the 2:40 a. m. statement must be suppressed. See *Commonwealth v. Riggins, supra; Commonwealth v. Wideman, supra.*

The 5:10 a. m. statement was given five and one-half hours after the initial *Miranda* warnings were given. The statement was given in Room 103 immediately upon appellant's return from the polygraph test. The two officers were "original warning" officers and the statement was at variance with the initial response of appellant denying involvement, but was substantially similar to and as incriminating as the 2:40 a. m. statement given to the polygraph operator. The 5:10 a. m. statement must also be suppressed because of the failure to rewarn appellant of his *Miranda* rights. *Commonwealth v. Riggins, supra,* and *Commonwealth v. Wideman, supra.* Moreover, an additional rationale exists for the suppression of the 5:10 a. m. statement.

█ In *Commonwealth v. Riggins, supra,* we declared that even though appellant was rewarned prior to the written confession, such confession must be suppressed as fruit of the poisonous tree. See *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In the instant case, the 5:10 a. m. statement, in addition to being independently suppressible, was tainted by the 2:40 a. m. statement and, therefore, was suppressible as the fruit of the poisonous tree.

Appellant's 8:10 a. m. statement came eight and one-half hours after his warnings in Room 103 of the Police Administration Building. This statement was made to Detective Lyons, one of the original warning officers. This again was different from appellant's original statement, but again substantially similar to the 2:40 a. m. and 5:10 a. m. statements. Again, the 8:10 a. m. statement must be suppressed because of the failure to rewarn appellant of his *Miranda* rights. See *Commonwealth v. Riggins, supra,* and *Commonwealth v. Wideman, supra.* The 8:10 a. m. statement is also suppressed as being tainted and the fruit of the poisonous tree. See *Commonwealth v. Riggins, supra,* and *Commonwealth v. Wideman, supra.*

Appellant raises other allegations of error we need not decide because of the resolution of the above issues, given our determination in appellant's direct appeals at Nos. 141 and 171, that his conviction must be reversed.

Appellant's appeals at Nos. 142 and 172, appeals from the denial of Post Conviction Hearing Act relief, are hereby dismissed as moot.

Judgments of sentence at Appeals Nos. 141 and 171 are reversed and case is remanded to the Court of Common Pleas of Philadelphia for a new trial. Appeals at Nos. 142 and 172 are dismissed as moot.

NIX, J., files a concurring opinion.

EAGEN, C. J., and POMEROY, J., dissent.

374

NIX, Justice, concurring.

I agree with the majority's findings that under the test articulated in *Commonwealth v. Riggins*, 451 Pa. 519, 304 A.2d 473 (1973) appellant should have been rewarned prior to questioning by the police officer who was preparing to administer the polygraph examination. Because of the failure to give a fresh warning on this occasion the statement made in response to the questioning by the officer administering the polygraph examination should have been suppressed. Further, the subsequent statements which were reiterations of the inculpatory disclosures first made to the polygraph examiner should also have been excluded as the fruit of the illegal questioning by that officer.