394 A.2d 431

**COMMONWEALTH of Pennsylvania**

v.

**Rodney SIMMONS, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued Jan. 17, 1978.

Decided Oct. 5, 1978.

Reargument Denied Nov. 27, 1978.

---

500

Richard P. Abraham, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Glenn S. Gitomer, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

O'BRIEN, Justice.

Appellant, Rodney Simmons, was tried by a judge sitting with a jury for the homicide of Samuel McCrae. Appellant was found guilty of murder of the third degree and possession of instruments of crime. He filed original post-verdict motions and supplemental post-verdict motions, all of which were denied. On March 25, 1976, he was sentenced to a term of imprisonment of ten to twenty years on his conviction of murder of the third degree, and a concurrent sentence of two and one-half to five years on the possession of instruments of crime conviction. He appealed the judgment of sentence imposed on the murder conviction to this court and the judgment of sentence imposed on the conviction of possession of an instrument of crime was appealed to the Superior Court, which certified that appeal to this court for disposition.

The facts of this appeal are as follows. On April 14, 1975, appellant, Rodney Simmons, also known as "Hot Lips," was sitting in the front passenger seat of an automobile driven by Kenny Biggs, also known as "Lemon". In the rear seat was another individual, known as "Nut," who was intoxicated. At approximately 9:30 p. m. the automobile driven by "Lemon" was in the vicinity of 29th and Clementine Streets, Philadelphia. The automobile was pulled to the side of the street where Clarence Williams, Gregory LaMarr and Michael Jackson were standing. Appellant inquired of the group where they were from. This question was explained as meaning in street language, did they belong to a street

gang. Williams responded "Go ahead." We don't do that stuff around here." This response caused a verbal exchange between appellant and Williams. Jackson then told the occupants of the car to turn off the engine and get out of the car. Appellant responded that they would be right back. As the car pulled away Williams, carrying a stick, followed the car up to a red light at 29th and Allegheny Avenue. When the car stopped at the light, Williams took cover behind a tree. Samuel McCrae then walked around the corner from Allegheny Avenue onto 29th Street. As McCrae crossed the street and approached the driver's side of Lemon's automobile, appellant leaned across from the passenger seat and fired a shot, striking McCrae in the chest. McCrae was later pronounced dead. The cause of death was determined to be the gunshot wound.

Appellant first argues that the court below erred in failing to suppress his confession. His argument is four-pronged:

a.) The statement was taken in violation of *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972).

b.) Appellant was arrested without a warrant and without probable cause and his subsequent confession was "tainted" as the fruit of the poisonous tree.

c.) The statement was not voluntarily given.

d.) Appellant received inadequate *Miranda* warnings in that the police did not inform him of his right to an attorney or that any statement he gave the police could be used against him in a court of law.

Appellant attempts to raise, by way of a supplemental brief, a fifth issue concerning the admissibility of his confession. He argues that the court below erred in failing to suppress his confession because the police failed to rewarn him of his constitutional rights prior to each period of interrogation preceding his confession. We do not reach the merits of appellant's fifth contention. His motion sought the suppression of his confession on the following grounds:

a.) The statement was obtained in violation of *Commonwealth v. Futch, supra.*

b.) The statement was the product of an illegal arrest and was, therefore, tainted as the fruit of the poisonous tree.

c.) The statement was not a product of appellant's free will and was, therefore, involuntary.

d.) Appellant was denied access to an attorney and his family.

e.) Appellant received inadequate *Miranda* warnings in that the police never told him of his right to an attorney or that any statement he gave could be used against him in a court of law.

f.) Appellant did not voluntarily waive his *Miranda* rights.

The suppression court denied appellant's application to suppress.

In his supplemental post-verdict motions, appellant attacked the suppression court's order on three grounds:

a.) There was no probable cause for the arrest and his confession was the product of that illegality.

b.) The statement was taken in violation of *Commonwealth v. Futch, supra.*

c.) The statement was involuntary.

The then-applicable Pa.R.Crim.P. 323(d) (1975) stated:

"(d) The application shall state specifically the evidence sought to be suppressed, the specific constitutional grounds rendering the evidence inadmissible, and shall state with particularity the facts and events in support thereof."

■ Appellant's application to suppress did not challenge the admissibility of his confession on the grounds that the police were required to rewarn him of his *Miranda* rights at intervals during the interrogation. See *Commonwealth v. Riggins,* 451 Pa. 519, 304 A.2d 473 (1973) and *Commonwealth v. Dixon,* 475 Pa. 365, 380 A.2d 765 (filed December 1, 1977). In *Commonwealth v. Baylis,* 477 Pa. 472, 384 A.2d 1185 (1978), we concluded that the specificity requirement of Pa.R.Crim.P. 323(d) was mandatory.

Moreover, appellant's supplemental post-verdict motions did not present any argument concerning a violation of *Miranda.* Rather, the motions concentrate on three limited areas:

 a.) *Futch* violation.

 b.) Involuntary nature of the confession.

 c.) Confession as the fruit of an illegal arrest.

Appellant's supplemental post-verdict motions were filed January 14, 1976, approximately one year after this court's decision in *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975). In *Blair,* this court required strict adherence to Pa.R.Crim.P. 1123(a), which required specific written post-verdict motions. Therefore, we find that appellant's *Miranda* claim is not preserved for appellate review.

 ■ Appellant argues that the suppression court erred in failing to suppress his confession because of an alleged violation of *Commonwealth v. Futch, supra.* We do not agree.

The chronology surrounding his statement is as follows. Appellant was arrested at approximately 11:48 p. m. on April 14, 1975, at his home in Philadelphia, and transported to the Police Administration Building. He arrived at police headquarters at 12:25 a. m., on April 15, and was placed in an interrogation room. From 12:25 a. m. until 2:50 a. m., appellant was left alone. The police officer in charge of the investigation, Detective Doyle, was at the scene of the shooting supervising the crime laboratory's collection of evidence and interviewing potential witnesses. Detective Doyle arrived at the police station at 2:50 a. m., when he immediately proceeded to the interrogation room where appellant was being held. Appellant was then permitted to use the bathroom facilities. The record continues by showing that between 2:54 a. m. until 3:01 a. m. Doyle elicited general biographical data from appellant. The chronology shows that from 3:01 a. m. until 3:35 a. m., appellant was warned of his constitutional rights and that he gave a statement. The substance of the statement was that appel-

lant admitted that he, "Lemon," and "Nut" were in the car passing 29th and Clementine Streets. He then stated that the group of boys standing on the corner began to shout and the victim was two car lengths away from their automobile when he was shot. Appellant also stated that "Nut" was in the back seat and was drunk. The statement did not indicate who fired the shot that killed McCrae. From 3:35 until 3:50 a. m. appellant was left alone. At 3:50 a. m. until 4:08 appellant was fed and taken to the mens' room. From 4:08 until 5:10 appellant was again left alone. From 5:10 a. m. until approximately 5:30 a. m., Detective Doyle performed a neutron activation test to determine if appellant had recently fired a gun. Beginning at 5:30 a. m. and continuing until 6:10 a. m., appellant gave an inculpatory statement that was signed at 6:30 a. m. He was subsequently arraigned.

In *Commonwealth v. Williams,* 476 Pa. 557, 383 A.2d 503 (1978), (hereafter *Williams II*), this court stated:

"In *Commonwealth v. Williams* [455 Pa. 569, 319 A.2d 419 (1974) hereafter *Williams I*], we established a three-pronged test to determine if a statement obtained during a pre-arraignment delay must be suppressed: (1) the delay must be unnecessary; (2) the evidence must be prejudicial; and (3) the evidence must be reasonably related to the delay. . . ." (Footnote omitted.)

Our initial determination under *Williams I* is to calculate the time with which we are concerned and properly designate that time as either necessary or unnecessary delay.

The time from 11:48 p. m. on April 14 to 12:25 a. m. on April 15 was spent in transporting appellant from his home to the Police Administration Building and is, therefore, necessary delay. From 12:25 a. m. until 2:50 a. m. appellant was left alone in the interrogation room. The reason for this waiting period was that the detective in charge of the investigation was at the scene of the crime supervising the investigation. As in *Williams II,* such a delay is an administrative delay, and as such cannot be classified as unnecessary. See *Commonwealth v. Rowe,* 459 Pa. 163, 327 A.2d 358 (1974).

Our inquiry thus begins with a consideration of the time from 2:50 a. m. until 5:30 a. m., the time when appellant began his inculpatory statement. A "delay" of two hours and forty minutes.

During the pertinent time, appellant was interviewed three times. The interviews totaled one hour and fourteen minutes. The remaining time appellant was alone, eating or using the restroom facilities. In *Williams II, supra,* we were confronted with a similar fact situation. In discussing the factual circumstance, we stated:

> ". . . In *Commonwealth v. Young,* 460 Pa. 598, 334 A.2d 252 (1975), we considered the effect of a five-hour delay between arrest and confession. During that period, however, the defendant was questioned only one hour and twenty-five minutes in three separate interviews. During the periods when the defendant was not being questioned, he was allowed to rest or eat. Under those circumstances, we held that there existed no proof that the confession was reasonably related to the delay. We believe the reasoning in *Young* is persuasive because of the similarity between the facts in *Young* and in the instant case, and we hold that the confession is not reasonably related to the delay."

As in *Williams II* and *Young, supra,* we believe that appellant's confession was not reasonably related to the delay.

Appellant next argues that the suppression court erred in failing to find that his confession was tainted and inadmissible as a result of an illegal arrest. See *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) and *Commonwealth v. Whitaker,* 461 Pa. 407, 336 A.2d 603 (1975).

In *Commonwealth v. Jackson,* 459 Pa. 669, 331 A.2d 189 (1975), this court defined "probable cause" as:

> "Any arrest must be based on probable cause. U.S. Const. amend. iv; *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1966); *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Commonwealth v. Jones,* [457] Pa. [423,] 322 A.2d 119 (1974), and cases cited

therein. In determining the presence of probable cause '[t]he crucial test is whether there were facts available at the time of the initial apprehension which would justify a man of reasonable caution in the belief that a crime had been committed and that the individual arrested was the probable perpetrator.' *Commonwealth v. Jones,* 457 Pa. at 428, 322 A.2d at 123 (citations omitted)."

The record in the instant case reveals that at the time of appellant's arrest the police possessed the following information: Clarence Williams, one of the youths at the corner, an eyewitness to the shooting, told police that an individual known to him as "Hot Lips" was a passenger in the automobile that stopped and engaged in an argument with the group. Williams also related that as he followed the auto to the corner of 29th Street at Allegheny, "Hot Lips" leaned over to the driver's side window, and that he saw a spark or flash and the decedent, McCrae, staggered around the back of the car and collapsed as it pulled away. Williams was also able to tell police that "Hot Lips" lived in the Abbottsford Project, Philadelphia. Further police investigation revealed that "Hot Lips" was appellant, Rodney Simmons, and that he lived at 3100A Berkley Drive, Abbottsford Project. The police arrested appellant at the above address at 11:48 p. m. on April 14, 1975.

We believe that the police possessed sufficient evidence to establish probable cause to arrest appellant for this homicide and, therefore, we need not determine whether the confession was "tainted".

Appellant next argues that his confession was inadmissible because it was not a product of his free will and was, therefore, constitutionally involuntary. We do not agree.

In *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282, 289–90 (1976), we stated:

". . . Although there is no single litmus-paper test for determining the voluntariness of a confession, it must be established that the decision to speak was a product of a free and unconstrained choice of its maker. . . . All attending circumstances surrounding the confession

must be considered in this determination. These include: the duration and methods of the interrogation; the length of delay between arrest and arraignment; the conditions of detainment; the attitudes of the police toward defendant; defendant's physical and psychological state; and all other conditions present which may serve to drain one's power of resistance to suggestion or to undermine one's self-determination." (Citations omitted.)

The suppression court made the determination, supported by the record, that appellant's confession was voluntary.

■■ In reviewing the suppression court's finding, our inquiry is limited to determining whether the finding of the suppression court is supported by the record and whether the inferences and legal conclusions based thereon are correct. Moreover, we need only consider the Commonwealth's evidence and the evidence of appellant that is uncontradicted. *Commonwealth v. Kichline, supra.*

The suppression court made the following findings and conclusions:

"Defendant never requested the assistance of counsel prior to the giving of any statement, although advised of his right to counsel.

"Defendant did not indicate any desire to speak to or have any relative notified.

"Defendant never requested that the interviews be stopped, nor did he request or demonstrate a desire to remain silent.

"The interrogating officer made no threats or promises to induce defendant to make any statement.

"The interrogating officer used no physical violence to procure defendant's statement.

"Defendant was alert and responsive to questions when giving his statement."

Reviewing the record of the suppression hearing in this case, under the *Kichline* standard, the finding of facts are supported by the record and there exists no reason to disturb the suppression court's findings.

■ Appellant next argues that the court below erred in admitting police testimony concerning acquisition of a gun which was later determined to be the murder weapon. Appellant claims that the testimony was hearsay and, therefore, was inadmissible. We do not agree.

At trial the Commonwealth called Detective Lawrence Grace of the Philadelphia Police Department, who testified that sometime after April 14, 1975, he met with Charles Owens, a member of the "28th and Oxford Street Uptown Gang." Owens gave Grace a .25 caliber handgun. Defense counsel objected on the basis that the testimony violated the hearsay rule. The court below overruled the objection.

We find no merit to appellant's contention. Detective Grace's testimony was not hearsay. It merely related how he, Grace, had obtained the weapon. Grace was present at trial and under oath and susceptible to cross-examination. We find no error in the ruling of the court below.

■ Appellant next argues that the court below improperly limited the cross-examination of Detective Wilfred Doyle, the police officer who conducted the interrogation of appellant. The basis of appellant's complaint is that the trial court limited his inquiry concerning the discrepancy between the police chronology (Commonwealth Exhibit C–5) and Detective Doyle's testimony at appellant's suppression hearing.

The alleged discrepancy concerns the failure of the chronology to indicate that between 5:00 a. m. and 5:30 a. m. appellant was given a neutron activation analysis test to determine if he had recently fired a weapon. The chronology indicated that appellant was left alone and fed during this time.

Detective Doyle confirmed that appellant was in fact tested, and explained that because no interrogation was conducted and because the police considered the neutron activation analysis to be similar in nature to fingerprinting, which is *not* noted on the chronology, no mention of the test was made.

A review of Detective Doyle's testimony reveals that defense counsel was permitted to question the witness about the above discrepancy. The trial court sustained two Commonwealth objections because the proffered questions were repetitive. We find no abuse of discretion in the action of the trial judge. See *Commonwealth v. Bailey*, 450 Pa. 201, 299 A.2d 298 (1973).

■ Appellant argues that the court below erred in refusing a defense point for charge relating to the indictment of possessing an instrument of crime. We do not agree. Section 907 of the Crimes Code provides:

"(a) Criminal instruments generally.—A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

"(b) Possession of weapon.—A person commits a misdemeanor of the first degree if he possesses a firearm or other weapon concealed upon his person with intent to employ it criminally.

"(c) Definitions.—As used in this section the following words and phrases shall have the meanings given to them in this subsection:

" 'Instrument of crime.'

"(1) Anything specially made or specially adapted for criminal use; or

"(2) anything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

" 'Weapon.' Anything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have. The term includes a firearm which is not loaded or lacks a clip or other component to render it immediately operable, and components which can readily be assembled into a weapon." Act of December 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973, 18 Pa.C.S.A. § 907.

After the court's initial charge on § 907, defense counsel requested supplemental instructions concerning the "intent

to employ it criminally" portion of the statute. Defense counsel asked the court to charge that the Commonwealth was required to prove beyond a reasonable doubt that appellant did *not* possess the gun for self-defense or defense of another and that if the Commonwealth failed to do so, appellant should be found not guilty of the charge of possession of an instrument of crime.

The court below refused the supplemental request, but did charge the jury that the Commonwealth was required to prove that appellant possessed the gun with the intent to use it criminally.

In *Commonwealth v. McComb*, 462 Pa. 504, 509, 341 A.2d 496, 498 (1975), we stated:

". . . [T]he trial court is not required to accept the language of the point submitted by counsel but rather is free to select its own form of expression. The only issue is whether the area is adequately, accurately and clearly presented to the jury for their consideration. . . ."

We find no reversible error in the court's supplemental charge.

■ Appellant next argues that the court below erred in failing to remove the murder indictment from the jury's consideration. Appellant's argument is centered around a dispute concerning the evidence of appellant's use of the gun and the reasons for shooting McCrae. We do not agree with appellant's argument.

His basic contention is that the jury should have believed his evidence that the shooting was committed in self-defense or in defense of others and disbelieved the Commonwealth's evidence concerning an inference of malice from the use of a deadly weapon on a vital part of the body. We do not believe the court erred in failing to remove the murder indictment from the jury's consideration.

In *Commonwealth v. Rose*, 463 Pa. 264, 344 A.2d 824 (1975), this court stated:

". . . Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. . . . The fact-

finder is free to believe all, part, or none of the evidence."
(Citations omitted.)

Factual disputes are for the jury to resolve, and the court below did not commit error in allowing the jury to consider the murder indictment. The facts as previously summarized clearly provide sufficient evidence when viewed in the light most favorable to the Commonwealth to sustain appellant's conviction for murder of the third degree.

 Appellant next argues that the court below erred in its charge to the jury by giving a biased summation of the evidence in favor of the Commonwealth. Appellant points to the following language:

"Now, I have heard the testimony in this case, my recollection is I did not hear of any testimony, and I may be wrong, but I heard of no provocation, serious provocation on the part of an actor as against Rodney Simmons. I did not hear anything about Rodney Simmons acting in a fit of frenzy, terror. Maybe you did. You have a right, of course, if you feel you have heard testimony that provoked this defendant into shooting, and that provocation was of a serious nature, and it was reasonable that he was in a fit of temper, frenzy, then, of course, you may find him guilty of voluntary manslaughter. That is your perogative. But I say I did not hear it. However, it is your duty to determine the facts, and from your recollection of the facts you are to determine whether or not voluntary manslaughter is involved in this case."

While the court did state that it did not hear any testimony of provocation, it clearly and unequivocally instructed the jury that they were the fact-finders and it was their recollections of the testimony which governed.

In *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974), in discussing similar comments, this court stated:

"The trial court expressed the view that if the jury found that appellant did in fact maliciously kill decedent, the court recalled no evidence of extenuating circumstances which would reduce the act to voluntary manslaughter. The court, however, also gave the jurors a full, complete,

adequate, and correct charge on voluntary manslaughter, and instructed them that voluntary manslaughter was an entirely permissible verdict. The trial judge also specifically instructed the jurors that their recollection of the testimony, and not his, controlled, that his opinion was no more than a gratuitous observation, and that the jury could and should return any verdict it felt justified. Moreover, the court did not express an opinion as to guilt or innocence or suggest that the jury return any particular verdict. The charge, read in its entirety, removed nothing from the province of the jury nor did it contain any judicial expression of guilt. The charge therefore was proper. . . ." (Citations omitted.)

As in *Yount*, the court below did not suggest a verdict, did not give the jury its opinion of guilt or innocence, and did not remove anything from the jury's consideration. We find no error.

Appellant alludes to another portion of the trial court's charge to the jury. This complained-of portion concerned self-defense and whether the evidence would allow a finding of self-defense. We have reviewed this portion of the charge and, as stated above, the trial judge did not suggest a verdict, did not give his opinion on guilt or innocence, and did not remove any issue from the deliberation of the jury. We find no error. *Commonwealth v. Yount, supra.*

Appellant next argues that the court below erred in its charge to the jury concerning the relationship of voluntary manslaughter and an imperfect claim of self-defense or defense of another. We do not agree.

In *Commonwealth v. Lesher*, 473 Pa. 141, 373 A.2d 1088 (1977), this court stated:

". . . It is well-established, however, that in charging the jury the trial court is free to use its own form of expression; the only issue is whether the area is adequately, accurately and clearly presented to the jury. *Commonwealth v. McComb*, 462 Pa. 504, 341 A.2d 496 (1975). Also, in evaluating a challenge to the correctness of instructions

to the jury, the charge must be read and considered in its entirety and it is the general effect of the charge that controls. *Commonwealth v. Rodgers*, 459 Pa. 129, 327 A.2d 118 (1974); *Commonwealth v. McNeal*, 456 Pa. 394, 319 A.2d 669 (1974)."

The court below properly instructed the jury concerning the use of force in self-protection set forth in § 505 of the Crimes Code, *supra*, and § 506, the use of force for the protection of other persons. The court also properly charged that a verdict of voluntary manslaughter was a correct verdict if the jury found that appellant unreasonably believed circumstances justified the use of force under § 505 and § 506 of the Crimes Code.

Reading the charge as a whole, we believe that the trial court properly explained to the jury that under either § 505 or § 506, in order for justification of homicide, one's belief had to be reasonable, while an unreasonable belief of the circumstances set forth in § 505 and § 506 of the Crimes Code would be sufficient to sustain a verdict of voluntary manslaughter under the provisions of § 2503(b) of the Crimes Code.

Appellant next argues that the court below erred in charging the jury that appellant had the burden, under § 505 of the Crimes Code, to show that he was not the aggressor in the confrontation. A review of the record, however, reveals that, while objecting to specific portions of the court's charge on voluntary manslaughter, self-defense and defense of others, appellant did not object to the charge on the basis that the court unconstitutionally placed a burden of proof upon appellant in regard to self-defense.

Pa.R.Crim.P. 1119(b) provides:

"(b) No portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury."

No specific objections having been made, the issue is not properly before this court.

Appellant next argues that the court below erred in its charge to the jury concerning retreat and use of deadly force under § 505 of the Crimes Code, *supra*. We do not agree.

In *Commonwealth v. Palmer*, 467 Pa. 476, 359 A.2d 375 (1976), this court, in considering the above provision, stated:

". . . The use of deadly force in protection of self is justifiable where certain requirements are met, Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 C.P.S.A. § 505(a) and (b)(2) [effective date June 6, 1973] . . . but such use of force is disallowed, even though it is otherwise allowable because such requirements are met, where

'The [defendant] *knows* he can avoid the necessity of using such force with complete safety by retreating . . . .' " (Emphasis supplied in *Commonwealth v. Palmer*.)

"18 C.P.S.A. § 505(b)(2)(ii). Thus, the use of deadly force, otherwise allowable, is disallowed only where the defendant *knows* an avenue of retreat is available. (Emphasis in original.)

". . . As applied instantly, if Palmer believed he was 'cornered' or without an avenue of retreat, it necessarily follows that he did not know an avenue of retreat was available and thus, he would have been excused from retreating and justified in using deadly force if the other requirements were present. However, according to the trial court's instructions if an avenue of retreat in fact existed, Palmer would have had the duty to retreat even though he did not know such an avenue of retreat was available. The jury under the testimony may have believed retreat was in fact available and still have believed Palmer did not know it was because he believed it was not. As such, the jury may have disallowed the justifiable use of deadly force by Palmer by applying an improper standard."

Having reviewed the trial court's charge and under the factual circumstances of this case, we find no reversible error. See *Commonwealth v. Lesher, supra.*

The trial court's instruction was not in conformity with the mandate of *Palmer*. We believe, however, that the factual circumstance of this cause renders *Palmer* inapposite. In the instant case, appellant was a passenger in an automobile, while the decedent was a pedestrian. The court's instruction informed the jury of the duty to retreat by all "possible means." Given the obvious and efficient method of retreat—the automobile—we believe the trial court's failure to comply with *Palmer* is not reversible error.

Judgments of sentence affirmed.

NIX and LARSEN, JJ., concur in the result.

MANDERINO, J., files a dissenting opinion in which ROBERTS, J., joins.

MANDERINO, Justice, dissenting.

I dissent. Rule 130 of our Rules of Criminal Procedure, and our decision in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), implementing former Rule 118 (now Rule 130) require that once arrested, an accused must ". . . be taken without unnecessary delay before the proper issuing authority [for] arraignment." We have subsequently struggled with many cases in which we attempted to give meaning to that command. We have concluded that "administrative delay,"—i. e., that period of time required to accomplish the mechanics of the booking process—is not an "unnecessary delay" under the rule. Administrative delay, however, has never been held to include a waiting period so that the detective in charge of the investigation, who happens to be at the crime scene at the time of an arrest, may return to the police station. The investigating detective's presence is not necessary for booking purposes. The only purpose for the investigating detective's return is to interrogate the arrestee. Time spent awaiting the investigating detective's arrival cannot be considered necessary so as to remove the requirements for prompt arraignment.

ROBERTS, J., joins in this dissenting opinion.