415 A.2d 1237

**COMMONWEALTH of Pennsylvania**

v.

**Marc STAPLES, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 6, 1979.

Filed Dec. 7, 1979.

Nino V. Tinari, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, MANDERINO and CIRILLO, JJ.*

PER CURIAM:

Appellant, Marc Staples, was tried before a judge, sitting without a jury, and was found guilty of voluntary manslaughter. Post-verdict motions were denied, and appellant was sentenced to a term of imprisonment of one to five years in prison which included an order that appellant participate in a work release program. This direct appeal followed.

Appellant raises only one issue in this appeal contending that the prosecution "did not produce sufficient evidence to prove beyond a reasonable doubt that the defendant did not use only enough force that was necessary for the protection of a third person."

Appellant admitted in a statement which he gave to the police and also in his testimony at trial that he hit the victim with a board or stick during an encounter among two different groups of young men which took place at the Cobbs Creek Golf Course in Philadelphia. The victim died from the blows received.

The defense contended that appellant struck the victim in order to protect Saul Cohen, a friend of the appellant who was about to be hit by the victim with a beer bottle. The evidence, however, was sufficient to prove beyond a reasonable doubt that the appellant did not hit the victim in order to protect Saul Cohen, but rather did so as an aggressor desiring to participate in the encounter.

In his statement to the police, which was introduced into evidence, appellant gave the following version of what occurred:

* Justice LOUIS L. MANDERINO of the Supreme Court of Pennsylvania and Judge VINCENT A. CIRILLO of the Court of Common Pleas of Montgomery County, Pennsylvania, are sitting by designation.

"Question: Were you involved in a fight on Cobbs Creek Golf Course on Friday, 4/16/76, at about 8:00 p. m.?

Answer: Yeah, I think it was later than that. About 10:00 p. m.

Question: Will you tell me in your own words what happened that night?

Answer: We were sitting on the gold course beside a green drinking a keg of beer. It was me, Peter Chang, Carl Sperling, Chippy—his first name is John—Lenny Riecco, Jeff Gilbert, Franny Costa, and some other kids. I forget their names. We were all running around playing and drinking. I remember Nicky Pepenelli was there too. Two kids came up, David Barbett and another kid, I can't remember his name. They said they had a fight down the creek with a couple kids. Everybody started picking things up and started toward the creek. I picked up a stick they use to mark the hole. We went down to the creek. When we got down to the creek we met about five kids who had already crossed and we were talking to them. Then Lennie Riecco punched some kid. But a fight didn't start then. It got broke up and things calmed down. Me, Chippy, Jeffrey Gilbert started back up the hill because things had calmed down. As we were going up the hill another fight broke out. The three of us went back down. I had already thrown away the stick I had. When we got back Lennie was fighting again. I don't think it was the kid he had hit before. As Lennie and the kid was fighting Carl Sperling hit somebody. Then everybody started pairing off. People were still hitting people but nothing really started yet. Then Lennie told a big blond kid, 'There, get the—' there is an obscenity in there—'back over the other side of the creek.' The other kid said something back. I don't remember what. Then Lennie hit the kid and they both fell on the ground. While they were on the ground Carl Sperling, Nicky Pepenelli, Peter Chang and some other kids started to kick the blond-hair kid and hitting with hands and other things. While this was happening a lot of other kids came

over the creek. I think they had sticks and beer bottles. When they came over I think this is when I picked up a board. *It was like a 2 by 4 or something, but it was dirty and rotted.* I'm not really sure what kind of stick it was. I turned to see what was happening and I got pushed or hit. I fell down. I got back up and turned and saw a blond-hair kid. *The kid, the blond, then swung at either Carl or the other kid. I know it hit somebody but I don't think it broke. Carl and the other kid started beating up on the blond. The blond was fighting back the best he could. One of their kids started to help the blond. I think I hit the blond in the back. When I hit him he was standing there and somebody backed off. He was hurting even before I hit him. I swung again and hit him. I think I hit him in the side. I know I hit him in the side. Then Carl and I think the other kid started to hit him. The blond started to run toward the creek. I hit him with the board in the back or the ass as he was running.* By this time everything started to split up. Their guys went back over the creek and me and the other guys went back up the hill and started to drink again. About ten minutes after we got back up there we heard noise coming from the top of the hill. I looked over and saw a lot of kids coming at us with sticks. Everybody ran except a couple. I ran down the hill into the woods. After a couple minutes I went back up the hill and I heard someone yelling and crying for help. A couple other kids came up with me and we started running toward them and they ran away. I went over to Nicky Pepenelli. He was standing and somebody was holding him up. He was all bloody and didn't have any shirt on. At this time everybody split up and went their own way. I stayed there for a while then I went to Richard Pomerantz's house. We sat around for awhile and talked. Me and my cousin, Larry Stern, went and got something to eat then I went back to Richard Pomerantz's house and slept there that night.

Question: Can you describe the kid you hit with the board?

Answer: He had blond hair, that's all I can remember.

Question: Where was the blond-haired kid the last time you saw him?

Answer: At the bottom of the hill running toward the creek, that's when I hit him in the ass with the board, before he started running.

Question: What did you do with the board after you got done the fight?

Answer: I threw it away. I don't remember where. The fight was over and I didn't need it anymore.

Question: Do you know anybody else who hit anybody with a board?

Answer: I don't know who, but there were a lot of sticks and things and a lot of people got hit and kicked.

. . . . .

Question: Do you know any of the boys you were fighting against?

Answer: No.

Question: How did the fight start, what did it start over?

Answer: All I know are the two kids that came up and said they got in a fight down at the creek.

Question: *Why did you get into the fight?*

Answer: *I guess because everybody else went down and I was drunk and didn't really care.*

Question: Is there anything else you want to say about this incident?

Answer: *I know I wasn't the only one hitting people with stuff. I wasn't the only one who hit the blond-haired kid.* Everybody was drunk. The guys I was with were drinking and the guys who came over were drinking and had beer bottles. I wish I never went there. I wish it never happened. I hope the kid turns out all right. I'm sorry it happened."

The above statement contradicts the appellant's trial testimony that he was acting to stop the victim who was engaged in an aggressive act with a beer bottle towards Saul Cohen, a friend of appellant. In the above statement the

victim was being beaten and was "fighting back the best he could." The victim "was hurting even before I [the appellant] hit him."

Moreover, Saul Cohen, who testified at the trial did not corroborate appellant's trial testimony. Although Cohen testified that someone threw a bottle and hit him, that someone was not the victim, he said. He did not see anything in the victim's hand when he saw the appellant hit the victim with a "pretty big" stick.

Appellant's trial testimony, according to the fact finder, the trial judge, did "not rate high on the scale of credibility."

Although testimony at the trial from witnesses who were present differed concerning exactly what happened during the encounter, questions of credibility were for the fact finder. The evidence viewed in the light favorable to the prosecution is sufficient to establish beyond a reasonable doubt that appellant did not act to protect anyone. *See Commonwealth v. Simmons*, 482 Pa. 496, 394 A.2d 431 (1978) (Manderino, J., dissenting on other grounds.)

Judgment of sentence affirmed.

This decision was reached prior to the death of MANDERINO, J.