475 A.2d 1283

**COMMONWEALTH of Pennsylvania,**

v.

**Eric WILLIAMS a/k/a David Murphy, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 25, 1984.

Decided April 17, 1984.

512

John W. Packel, Chief, Appeals Div., Karl Baker, Philadelphia, for appellant.

Eric B. Henson, Deputy Dist. Atty., Kenneth S. Gallant, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

LARSEN, Justice.

In the dark early evening of January 24, 1980, James Duggan, manager of a local Philadelphia meat market, drove to the Continental Bank at 19th and Walnut Streets to make an after-hours deposit. He parked his car at the corner, left it, and proceeded to walk toward the night depository. He was carrying a bank bag containing cash, checks and food stamps all totalling approximately $4,000.00. As he approached the deposit box he was confronted by at least two persons, one of whom positioned himself between Duggan and Duggan's automobile. The victim noticed several people standing nearby at a bus stop and he cried out for help. None of the bystanders responded to his plea and the victim started to run. On his heels was one of the attackers. As he raced into the street he slipped and fell to the ground. His pursuer snatched the money bag Duggan was carrying and fled in the darkness. The victim immediately notified the authorities of the robbery.

During the investigation of the crime a witness identified the appellant, Eric Williams, as one of the robbers. This

information was received by detective Kuhlmeier who, in turn told detectives Walsh and Russell of the witness identification. Detectives Walsh and Russell were told also that a warrant for the arrest of the appellant had been issued.[1] In addition, Detective Walsh had received "street information" that Eric Williams was involved in the robbery.[2]

On February 6, 1980, at approximately 7:00 P.M., the appellant was arrested by detectives Walsh and Russell. At the time of his arrest, appellant was 17½ years old.[3] He was taken to the station house where he was met by Detectives Kuhlmeier and Romano. He was informed of the circumstances of the crime and the reason for his arrest. Appellant was asked as to the whereabouts of his parents. He stated that his father could be reached at his home. Detectives Kuhlmeier and Romano left the station and drove to the Williams' residence. There they met Mr. Ollie Williams, the appellant's father. Detective Kuhlmeier informed Mr. Williams that his son had been arrested, and the reasons for the arrest. Mr. Williams accompanied the detectives back to where the appellant was being held.

Upon arriving at the station, Mr. Williams was taken to his son and the two of them were permitted to briefly consult in private.[4] Following the father-son consultation, the appellant and his father were advised of the appellant's *Miranda* rights [5] and they were jointly asked seven compre-

1. The identity of the witness who identified the appellant was not revealed. Additionally, the information concerning an arrest warrant proved to be erroneous as no warrant for the arrest of Eric Williams was ever issued.

2. Neither the source nor the reliability of the "street information" was testified to by Detective Walsh.

3. Appellant was born August 4, 1962.

4. Detective Kuhlmeier testified:
 "... I let Eric [Williams] talk with his father for a few minutes and then advised him of their *Miranda* rights..."

5. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

hension questions.[6] During the time that appellant and his father were given the *Miranda* warnings and asked the comprehension questions, they were together and had a continuing opportunity to confer.

In the presence of his father, the appellant waived his *Miranda* rights and made an inculpatory statement. Detective Kuhlmeier, sitting in front of a typewriter, took appellant's statement, typing each question as asked and each answer as given. Shortly after 9:00 P.M. the completed formal confession was signed by both the appellant and his father.

Preliminarily, the appellant filed an omnibus pre-trial motion seeking, inter alia, the suppression of his confession along with all physical evidence and all in-court and out-of-court identification. Following a hearing on the motion, the lower court ordered appellant's statement suppressed.[7]

6. The questions asked by the detective and the answers given by the appellant are as follows:

Q. "Do you understand that you have a right to keep quiet and do not have to say anything at all?"
The appellant answered in the affirmative.

Q. "Do you understand that anything you say can and will be used against you?"
Appellant gave an affirmative reply.

Q. "Do you want to remain silent?"
A. The appellant's answer was in the negative.

Q. "Do you understand that you have a right to talk with a lawyer before we ask you any questions?"
Appellant replied in the affirmative.

Q. "Do you understand that if you cannot afford to hire a lawyer and you want one we will not ask you any questions until a lawyer is appointed for you free of charge?"
The appellant answered affirmatively.

Q. "Do you want either to talk with a lawyer at this time or to have a lawyer with you while we ask you questions?"
The appellant responded in the negative.

Q. "Are you willing to answer questions of your own free will, without force or fear, and without any threats or promises having been made to you?"
The appellant answered affirmatively.

7. The lower court noted "that although the [appellant] sought to suppress physical evidence and identification evidence, there was, in fact, no physical evidence or identification evidence to suppress.

The court's ruling was based upon the testimony that appellant's father was not informed of appellant's constitutional rights prior to their private conference; and that after the *Miranda* warnings were given, the appellant was not provided an opportunity to consult with his father out of the presence of the police. The Commonwealth appealed [8] and the Superior Court reversed holding that since his father was present when the appellant waived his rights and confessed, the waiver was knowing and the confession voluntary.[9] We granted appellant's petition for allowance of appeal.

The principal issue raised in this appeal is whether the confession of a 17½ year old juvenile suspect must be suppressed on the basis that he did not have an opportunity to privately consult with his father after both were given the *Miranda* warnings and asked the comprehension questions. The appellant argues that the police must give a juvenile suspect an opportunity to consult with an interested adult prior to interrogation. Further, the interested adult must be informed of the juvenile's constitutional rights before the juvenile and the adult confer in private. The appellant insists that since neither he nor his father was advised of appellant's *Miranda* rights prior to their brief consultation out of the presence of the officers, his confession should be suppressed notwithstanding that both were informed of his rights and they had an opportunity to confer in the presence of the authorities immediately before and during the time he gave his confession.

Appellant's argument is grounded upon the *per se* "interested adult" rule which evolved out of this Court's decisions

8. The Superior Court found that appeal by the Commonwealth was proper in this case. "[T]he prosecution may appeal from an order granting suppression where the practical effect of the order is to terminate effectively or substantially handicap the prosecution's case. See *Commonwealth v. Bosurgi,* 411 Pa. 56, 63, 190 A.2d 304, 308 (1963) *cert. denied,* 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963)"

9. *Commonwealth v. Williams,* 309 Pa.Super. 63, 454 A.2d 1083 (1983).

in: *Commonwealth v. Roane*, 459 Pa. 389, 329 A.2d 286 (1974); *Commonwealth v. Starkes*, 461 Pa. 178, 335 A.2d 698 (1975); and *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975).[10]

In *Roane*, a 16 year old juvenile defendant was arrested at his home. His mother followed him and the police officers to the station. After being made to wait more than two hours while the police questioned her son alone, the juvenile's mother found her way into the interrogation room. She then was permitted to speak with her son in that room, in the presence of the police officers. While his mother was present, the juvenile was advised of his constitutional rights. The suspect's mother told the police that she did not want her son making a statement and she wanted an attorney for him. The police ignored her comments, accepted the juvenile's waiver of rights, and took his formal statement. In a plurality opinion ruling that the statement must be suppressed, then Justice O'Brien (later Chief Justice) said:

"An important factor in establishing that a juvenile's waiver of his constitutional rights was a knowing and intelligent one would be evidence that, before he made his decision to waive those rights, he had access to the advice of a parent, attorney, or other adult who was primarily interested in his welfare."

*Commonwealth v. Roane, supra*, 459 Pa. at 394, 329 A.2d at 288.

"Since the record indicates that the Commonwealth first attempted to exclude appellant's mother from the interrogation and then, when she finally gained access, did not afford her an opportunity to advise her son privately about his constitutional rights, although she indicated that she wished him to be afforded the right of counsel, we hold that the Commonwealth failed to estab-

**10.** These three cases were decided over an eight month period, beginning with *Roane* on November 20, 1974, and then *Starkes* on March 18, 1975, and finally *McCutchen* on July 7, 1975.

lish that appellant's waiver of his rights was a knowing and intelligent one."

*Id.,* 459 Pa. at 396, 329 A.2d at 289.

Next, this Court considered *Commonwealth v. Starkes,* 461 Pa. 178, 335 A.2d 698 (1975). In *Starkes,* the juvenile defendant was questioned alone by the police for more than an hour. During that time he denied any knowledge of the crime being investigated. He then was allowed to consult privately with his mother. She urged him to tell the truth. Following the consultation with his mother, the juvenile was questioned again. This time he gave an inculpatory statement. Later, in the presence of his mother, the juvenile was advised of his *Miranda* rights, he waived them and made a formal confession. Again in a plurality opinion, this time authored by then Justice Nix (now Chief Justice) the juvenile's confession was suppressed.

"Where an informed adult is present the inequality of the position of the accused and police is to some extent neutralized and due process satisfied. However, where the adult is ignorant of the constitutional rights that surround a suspect in a criminal case and exerts his or her influence upon the minor in reaching the decision, it is clear that due process is offended."

*Commonwealth v. Starkes, supra,* 461 Pa. at 188, 335 A.2d at 703.

"Where a parent is present we must at least require that parent to be advised of the rights possessed by the minor suspect before the parent may be permitted to influence the decision which the minor must make."

*Id.,* 461 Pa. at 189, 335 A.2d at 703.

Approximately four months later, this Court decided the case of *Commonwealth v. McCutchen, supra.* In a majority opinion written by then Justice O'Brien (later Chief Justice), the rationale of *Roane* and *Starkes* was approved of and applied. The McCutchen court held that since the juvenile defendant was not afforded an opportunity to con-

sult with his mother before he waived his rights, his confession must be suppressed.[11]

The *per se* rule which emerged from this line of cases came to be known as the "interested adult" rule or the *McCutchen* Rule. This rule provided that no person under the age of eighteen years could waive his right to remain silent and his right to the assistance of counsel without being provided an opportunity to consult with an interested adult, who is informed of the juvenile's rights and is interested in the welfare of the juvenile.

Prior to the adoption of the *per se* "interested adult" rule, the standard for determining whether a juvenile knowingly waived his rights and made a voluntary confession was a traditional totality of circumstances analysis.

"[I]n determining whether incriminating statements of an accused were voluntarily given and whether or not he intelligently waived his constitutional rights, all of the attending circumstances must be considered, including the age, maturity and intelligence of the individual involved."

*Commonwealth v. Moses*, 446 Pa. 350, 354, 287 A.2d 131 (1971). *Also see: Commonwealth v. Porter*, 449 Pa. 153, 295 A.2d 311 (1972).

The *per se McCutchen* rule, in discarding the totality of circumstances test, negated the relevance of all those factors which should be and must be considered in deciding whether a confession was knowingly and voluntarily given. Instead, a prophylactic principle was adopted and applied

11. Briefly, the facts in *McCutchen* were: At the request of two police officers, the defendant McCutchen went to the station to answer some questions about a death. He arrived at the station house at approximately 7:00 P.M. He was informed of his rights and questioned for more than 2 hours. He was left alone for an hour, and then with his consent, he underwent a polygraph examination. He was told that the test showed he was lying. He then gave an incriminating statement which was written in longhand and which he signed at 1:10 A.M. At this point the police brought the defendant's mother to the station. After she was told of her son's confession, she was given the opportunity to see the defendant. Later, a second formal typewritten confession was made.

which shunned the real issue of the voluntariness of a confession.

Recently, in *Commonwealth v. Christmas*, 502 Pa. 218, 465 A.2d 989 (1983),[12] this Court recognized that adherence to the inflexible *per se* rule of *McCutchen* resulted in "the exclusion from evidence of juvenile confessions that were in fact knowingly and voluntarily given." *Id.*, 502 Pa. at 222–23, 465 A.2d at 992. *See also: Commonwealth v. Veltre*, 492 Pa. 237, 424 A.2d 486 (1980) (Opinion In Support of Affirmance, Larsen, J.); *Commonwealth v. Nelson*, 488 Pa. 148, 411 A.2d 740 (1980) (Opinion in Support of Reversal, Larsen, J.).

> "Indeed, upon re-examination of the *per se* rule promulgated by *McCutchen*, we believe that protection of juveniles against the innate disadvantages associated with the immaturity of most youth may well be achieved in a manner that affords more adequate weight to the interests of society, and of justice, while avoiding *per se* applications of the interested and informed adult rule that serve, in an overly protective and unreasonably paternalistic fashion, to provide means for juvenile offenders to secure suppression of confessions in fact given in a knowing, intelligent and voluntary manner."

*Commonwealth v. Christmas*, *supra*, 502 Pa. at 223, 465 A.2d at 992. In overruling *McCutchen*, we recognized the lack of wisdom in a rule which is overly paternalistic, unnecessarily protective and sacrifices too much of the interests of justice. *Commonwealth v. Christmas*, *supra*. *See also: Commonwealth v. Veltre*, (Opinion in Support of Affirmance, Larsen, J.) *supra*. In its place, however, the court announced that:

**12.** The facts in *Christmas* are analogous to the facts in the present case in the following respects: (a) After the juvenile was arrested, he was held without being questioned while the police summoned the suspect's father, (b) When the father arrived at the station, the juvenile and the father were permitted to confer in private, (c) The father was not advised of the juvenile's constitutional rights prior to the private consultations, (d) immediately after the private conference, the juvenile was informed of his rights, he waived them and made a confession in the presence of the father.

"[T]here shall exist *a presumption* that a statement derived in the absence of ... an opportunity for consultation [with an interested and informed adult] is inadmissible, but that presumption shall be regarded as rebutted where the evidence *clearly demonstrates* that the statement obtained from the juvenile was in fact knowingly, intelligently, and voluntarily given."

*Commonwealth v. Christmas, supra,* 502 Pa. at 223, 465 A.2d at 992.

 We now reject the application of a rebuttable presumption that a juvenile is incompetent to waive his constitutional rights without first having an opportunity to consult with an interested and informed adult. The presumption adopted in *Christmas* serves no useful analytical purpose. The so-called presumption is not a presumption at all since it merely verifies the Commonwealth's established burden of proving a knowing, intelligent and voluntary waiver on the part of a juvenile. *See Commonwealth v. Christmas,* 502 Pa. 218, 223–24, 465 A.2d 989, 993 (1983) (Concurring Opinion, Larsen, J.).

The requirements of due process are satisfied, and the protection against the use of involuntary confessions which law and reason demand is met by application of the totality of circumstances analysis to all questions involving the waiver of rights and the voluntariness of confessions made by juveniles. All of the attending facts and circumstances must be considered and weighed in determining whether a juvenile's confession was knowingly and freely given. Among those factors are the juvenile's youth, experience, comprehension, and the presence or absence of an interested adult.

 In the instant case, the appellant, at the time of his arrest, was six months away from his eighteenth birthday. He had considerable experience with the criminal justice system starting when he was placed on a consent decree probation at age 13½. Between 1978 and 1980, the appellant was adjudicated delinquent at least four times. He served a probation and later an intensive probation. On

three occasions he was committed to a youth detention facility. (At least twice the appellant ran away from the facility where he was committed and he had to be returned.)

Further, the record shows that when appellant was arrested and detained, his physical condition was normal. At no time was he subjected to physical or psychological abuse. He was of normal intelligence and responsive to the questions asked of him. He was not under the influence of drugs or alcohol and there was nothing unusual about his manner of speech. He was not threatened, nor were any promises made to him. He was in custody for less than two hours and actually questioned for a little more than an hour before he made his confession. Finally, he had an opportunity to talk with his father, and his father was present during interrogation, when he waived his rights and gave his statement.

Based upon all of the relevant facts and circumstances appearing of record, it is clear from the totality of the circumstances that the appellant's confession was knowingly, intelligently, freely and voluntarily made.[13]

The Order of the Superior Court is affirmed and this case is remanded for proceedings consistent with this opinion.

FLAHERTY, J., filed a concurring opinion.

NIX, C.J., and ZAPPALA, J., filed dissenting opinions.

FLAHERTY, Justice, concurring.

This Court recently adopted, in *Commonwealth v. Christmas*, 502 Pa. 218, 465 A.2d 989 (1983), a presumption that statements obtained from a juvenile defendant are inadmissible, when the juvenile has been denied an opportu-

---

13. Because of the disposition we make of this case, we need not consider the appellant's argument that the Superior Court erred in stating that "... assuming arguendo that the [lower] court finds that the identification procedure which led to [appellant's] arrest was not necessarily suggestive, probable cause [for his arrest] existed despite the fact that the police believed erroneously that an arrest warrant had issued." *Commonwealth v. Williams*, 309 Pa.Super. at 71, 454 A.2d at 1087. The lower court did not consider this issue; on remand, it will have the opportunity to do so.

nity to consult with an interested and informed adult, unless the evidence clearly demonstrates that the juvenile was in fact competent to make a knowing, intelligent, and voluntary waiver of his rights. This presumption serves as a necessary focus for analysis in determining whether any given statement should be suppressed, and reflects the fact that "juvenile defendants are not, in the usual case, on a par with adults with respect to adequacy of their judgment, knowledge of the consequences of their admissions, and ability to resist overbearing police interrogation." Id., 502 Pa. at 222, 465 A.2d at 991. Indeed, the totality of the circumstances approach, advanced in the opinion authored by Mr. Justice Larsen, provides an inadequate analytical framework for addressing the suppression issue, for it accords no recognition to the need, in the typical case, to afford the juvenile an opportunity to consult with an interested and informed adult.

The rule promulgated in *Christmas* rested upon a recognition that, " '[b]ecause of the unique disadvantage in the custodial interrogation process of the youthful accused due to his immaturity, ... merely a consideration of the fact of youth in the totality of the circumstances formulation ... was inadequate to insure that a juvenile waiver was indeed a knowing one.' *Commonwealth v. Smith*, 472 Pa. [492] at 497–498, 372 A.2d [797] at 800 (footnote omitted)." *Commonwealth v. Christmas*, 502 Pa. at 222, 465 A.2d at 992. Accordingly, this Court stated in *Christmas*,

[W]hile the presumption of inadmissibility will serve to protect the juvenile defendant, who, in the *usual* case, is likely to be disadvantaged by his youth, consideration will no longer be foreclosed with respect to the totality of circumstances present in a particular case that may render the juvenile's waiver of rights a knowing and voluntary one. Such circumstances include the manner in which the juvenile was treated by police authorities, as well as the juvenile's age, experience, background, intelligence, capacities, and prior record.

Id., 502 Pa. at 223–24, 465 A.2d at 992. The *Christmas* rule is a sound one, responsive to the needs of juveniles and to the interests of justice. Abandonment of its requirements is not warranted.

While I dissent to the abandonment of the *Christmas* rule, I concur that, under the circumstances of the instant case, the juvenile's statement was in fact knowingly, intelligently, and voluntarily given. The evidence clearly demonstrates that a presumption of inadmissibility should be regarded as rebutted by factors such as the defendant's age of nearly eighteen years, his extensive experience with the criminal justice system through repeated adjudications of delinquency and sentences of probation, the non-overbearing circumstances under which he was informed of his rights, and the fact that he did have some opportunity to consult with his father before issuing a confession.

NIX, Chief Justice, dissenting.

I am compelled to dissent because I continue to believe that the application of the totality of the circumstances analysis cannot truly gauge the voluntariness of a juvenile's waiver of his right to assistance of counsel and his right against self-incrimination. Pa. Const. art. I, § 9. As we have recognized,

> [b]ecause of the unique disadvantage in the custodial interrogation process of the youthful accused due to his immaturity, ... merely a consideration of the fact of youth in the totality of the circumstances formulation [is] inadequate to insure that a juvenile's waiver was indeed a knowing one.

In a series of our decisions beginning with *Commonwealth v. Roane,* [459 Pa. 389, 329 A.2d 286 (1974)], we announced that the administering of *Miranda* warnings to a juvenile, without providing an opportunity to that juvenile to consult with a mature, informed individual concerned primarily with the interest of the juvenile, was inadequate to offset the disadvantage occasioned by his youth. The new rule ["the" *McCutchen* rule] appreciates that the inexperience of the minor affects not only his or

her ability to understand the full implication and consequences of the predicament but also renders the judgment inadequate to assess the spectrum of considerations encompassed in the waiver decision. It was· therefore reasoned that the impediment of immaturity can only be overcome where the record establishes that the youth had access to the advice of an attorney, parent, or other interested adult and that the consulted adult was informed as to the constitutional rights available to the minor and aware of the consequences that might follow the election to be/made. (footnotes and citations omitted). *Commonwealth v. Smith,* 472 Pa. 492, 497–99, 372 A.2d 797, 800–01 (1977).

I am not confident that the totality of the circumstances approach adequately considers the fact of youth or the impact of the defendant's immaturity on his ability to effectively waive his rights. Moreover, I believe that the use of the totality formulation, in practice, places upon the defendant the burden of proving that due to his immaturity he did not knowingly and intelligently waive his constitutional rights.* The use of the prophylactic approach of *Commonwealth v. McCutchen,* 463 Pa. 90, 343 A.2d 669 (1975), however, would assure that where the opportunity for consultation is not provided the waiver will not be effective.

The attack upon *McCutchen* has in large measure been inspired by the heinous nature of the crimes the juvenile is capable of committing. This capability on the part of some juveniles, however, does not warrant a relaxing of our vigil in determining whether the custodial statements are voluntarily made. It is legitimate to punish the juvenile offender for the crime he commits, and that punishment should be commensurate with the crime committed. However, re-

---

* Under the law, the Commonwealth has the burden of proving a knowing and intelligent waiver of the rights in question. *Commonwealth v. Fogan,* 449 Pa. 552, 296 A.2d 755 (1972). However, since the immaturity of the youthful defendant is only one factor among many considered under the totality formulation, in effect, the real significance of the defendant's immaturity on his waiver decision must be carried by the defense.

gardless of the nature of the crime, the procedure by which we adjudicate his guilt should not ignore the impediment of immaturity.

I reluctantly joined the majority in *Commonwealth v. Christmas*, 502 Pa. 218, 465 A.2d 989 (1983), which represented a watered down protection of the minor's rights. I did so believing that this compromise would nevertheless be better than reverting to the former totality standard. Since the majority has today rejected *Christmas* and insists upon the reinstatement of the totality standard, I express my dissent and reaffirm my belief in the *McCutchen* approach.

ZAPPALA, Justice, dissenting.

I dissent from the majority's finding of admissibility. The record shows and the Court of Common Pleas found that Appellant and his father were not given an opportunity to consult privately out of the presence of the police after being advised of Appellant's rights. Without such consultation, the waiver is invalid.

In *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975), we held that a confession must be suppressed if given by a juvenile who has not been given an opportunity to consult with an interested and informed adult before waiving his or her rights. This was a *per se* rule. In *Commonwealth v. Christmas*, 502 Pa. 218, 465 A.2d 989 (1983), we abandoned the *McCutchen* rule and held that a juvenile would be presumed incompetent to waive his or her rights without an opportunity to consult with an interested and informed adult but that the validity of a waiver would be determined on the basis of the totality of the circumstances. The majority would now apply a totality of the circumstances test without the presumption of incompetency. I joined the majority decision in *Christmas* in order to preserve the modicum of protection that the presumption of incompetency would provide. I now abandon that position and would hold that the *McCutchen* Rule continues to apply.

If the *McCutchen* rule applies, the Commonwealth has the burden to establish an effective waiver of the juvenile's

rights, and such effective waiver must appear in the record, *Commonwealth v. Wade*, 485 Pa. 453, 402 A.2d 1360 (1979); *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981). Accord, *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Piankhy v. Cuyler*, 703 F.2d 728 (3rd Cir., 1983). The adult with whom the juvenile consults must be informed and aware of the juvenile's rights and be genuinely interested in the juvenile's welfare, *Commonwealth v. Barnes*, 482 Pa. 555, 394 A.2d 461 (1978). If the adult is not informed of the juvenile's rights, the requirements are not met, *Commonwealth v. Graver*, 473 Pa. 473, 375 A.2d 339 (1977). The purpose of the rule is to balance the disadvantage of the juvenile's immaturity, *Barnes, supra.* Juveniles are presumed to require special provisions. That is the policy embodied in the Juvenile Act, Act of July 9, 1976, P.L. 586, No. 142, 42 P.S. § 6301 et seq.

I reject the majority's holding that Appellant's waiver should be considered valid because of his experience with the criminal justice system. A suspect who is questioned on various occasions must be rewarned of his or her rights if necessary under the circumstances, *Commonwealth v. Dixon*, 475 Pa. 365, 380 A.2d 765 (1977). Rewarning may be necessary when there has been a lapse of time, when a suspect is interrogated at a different place from that where the warnings were given or by a different officer than the one who gave the warnings, or when the suspect gives statements that are materially different than those that might have been made at the time of the warnings. We cannot presume that Appellee knew his rights because of previous encounters with the police, especially when we have no knowledge as to when or under what circumstances these encounters occurred or what warnings Appellee was given. Neither were Appellee's previous police encounters sufficient to meet the requirements of *McCutchen.* We do not know what, if any, adult consultation Appellee had on those occasions. In any event, I would find that it was necessary for Appellee to consult with an interested and

informed adult prior to interrogation on the charge involved here. We do not presume that an adult knows his or her rights on the basis of previous encounters with the police. We should not make such a presumption about a juvenile. A juvenile is presumed to be less knowledgeable about these matters than an adult. We established the *McCutchen* rule with that in mind.

The "totality of circumstances" rule advocated by the majority opinion would add to the burdens of an overworked judicial system by requiring an examination of the circumstances in each case. The majority does not offer readily applicable criteria by which it may be determined when a confession by a juvenile will be admissible without the juvenile having had an opportunity to consult with an interested and informed adult. It would be preferable to retain the *McCutchen* rule, which provides a definite and easily applicable means of protecting the interests of a juvenile suspect. I would adhere to the previously applied finding of *McCutchen* that the requirement of consultation with an interested adult in all cases is necessary to protect such interests.

I would reverse the Order of the Superior Court and reinstate the Order of the Court of Common Pleas.