J-S55022-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ZAIE ESCRIBANO | : | |
| | : | |
| Appellant | : | No. 388 WDA 2019 |

Appeal from the PCRA Order Entered February 27, 2019
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0001534-2013

BEFORE:   MURRAY, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED FEBRUARY 3, 2020**

Zaie Escribano appeals from the order denying his Post-Conviction Relief Act ("PCRA") petition.[1] He argues the PCRA court improperly rejected four claims that his trial counsel was ineffective. We affirm.

At 1:00 a.m. on May 23, 2013, police in the city of Washington received a report of gunfire at Ernie's Freestyle Bar. Trial Court Opinion, filed May 1, 2019, at 1. As they were arriving at the scene, they observed a vehicle leave the bar's parking lot at a high rate of speed and drive over a curb, and they stopped the vehicle. *Id.* at 1-2. Escribano was in the rear passenger seat, and Keith Rosario was sitting in the front passenger seat. *Id.*

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

Police officers instructed the occupants to get out of the vehicle and they then observed a firearm under the front passenger seat. *Id.* at 2. They could see the firearm from their position on the sidewalk, three feet from the vehicle. N.T., 6/10/15, at 49. The muzzle was facing the front of the vehicle, and the handle was pointing toward the rear. Tr. Ct. Op. at 2. The front passenger seat had a plastic "shroud" in front of it, such that a person in the front passenger seat could not have easily pushed the gun under the seat toward the rear of the car. *Id.* at 11. Rosario told the police it was his gun, and that he had fired it into the air that night in response to threats against him and Escribano. N.T., 6/10/15, at 152, 155-56.

The Commonwealth charged both Escribano and Rosario with possession of the firearm.[2] Rosario pled guilty, while Escribano pled not guilty and proceeded to a jury trial. On the day of trial, Escribano alerted the court that a minor, R.D., was going to testify and take responsibility for the firearm. Tr. Ct. Op. at 14; N.T., 5/11/15, at 2. The court rescheduled trial for the following month, so that R.D. could obtain counsel and consult with her mother. Tr. Ct. Op. at 14; *see also* Order, 5/14/15.

When the trial reconvened, Escribano's counsel informed the court that R.D. was present and would be testifying for the defense. N.T., 6/10/15, at 18, 81-82. R.D.'s counsel stated that he had advised R.D. about her rights and the possible repercussions of her testimony, and confirmed that R.D. was

---

[2] Escribano was charged with Person not to Possess, Use, Manufacture, Control, Sell, or Transfer Firearms under 18 Pa.C.S.A. § 6105(a)(1).

prepared to testify. *Id.* at 87. R.D. also told the court she was prepared to testify, and that she had discussed her intention to testify with her mother, who was at work. *Id.* at 90.

The court then asked counsel, "[F]or a juvenile to waive their right – Fifth Amendment right, don't you have to have their parent waive it, too?" *Id.* at 91. Both the prosecutor and R.D.'s counsel responded in the affirmative. *Id.* However, Escribano's counsel stated that "a parental waiver is for [interrogation] of a minor in regard to an investigation that might be ongoing," and argued that R.D. could testify because she had been advised by counsel and was in court pursuant to a subpoena. *Id.* at 92-93. The court determined that if R.D. was going to testify, her mother would have to consent on the record. *Id.* at 101-02. The court ordered R.D.'s counsel to contact R.D.'s mother while trial proceeded. *Id.* at 100-01. Escribano's counsel acquiesced in this procedure.

R.D.'s counsel was able to speak with R.D.'s mother and he informed the court that R.D.'s mother would not give her consent for R.D. to testify. *Id.* at 111. R.D.'s counsel also stated that after R.D.'s mother had said "no," R.D. no longer wished to testify. *Id.* The court then questioned R.D., who confirmed that she had spoken with her mother, who did not want her to testify, and that she had likewise decided she no longer wanted to testify. *Id.* at 112-13. Escribano's counsel then asked R.D. if she wanted to testify, and R.D. responded, "I was told for – that if my mom said 'no,' that I was definitely a

'no,' too. And I'm agreeing." *Id.* at 114. R.D. again stated she agreed with the advice of her mother and her attorney. *Id.* at 115.

R.D.'s counsel argued, "I guess to the extent that if we don't have parental consent, I don't believe she can testify." *Id.* The court agreed, saying, "I don't think she can waive her right to self-incrimination without parental consent." *Id.* Finally, the court asked R.D., "You understand your right to remain silent?" *Id.* at 115. It also asked, "[B]ased upon the advice of your counsel and your mother, you are remaining silent?" *Id.* at 116. R.D. responded "Yes, sir," to both questions. *Id.* The court excused R.D. from the courtroom. Escribano's counsel did not object.

The Commonwealth then proceeded with its case and presented the testimony of two police officers. Escribano presented the testimony of the driver of the car, Takesha David. David testified that she had been in the bar with Escribano and Rosario that night, had not seen Escribano with a gun, and when the police found the gun in her car, Rosario told the police it was his. N.T., 6/10/15, at 181-83, 185, 196, 199-201. The parties stipulated that Escribano had a prior conviction for a felony, which disqualified him from possessing firearms. *Id.* at 171.

The jury found Escribano guilty. Escribano filed a post-verdict motion in which he challenged the sufficiency of the evidence and argued the court incorrectly prohibited the testimony of "a ready and willing witness." Post-Verdict Motions at 3 (unpaginated). The motion was denied by operation of

law.[3] The court thereafter sentenced Escribano to serve 5 to 10 years in prison. Escribano did not file post-sentence motions or a direct appeal.

In June 2016, Escribano filed a first, timely PCRA Petition. The PCRA court appointed counsel, who filed an amended petition and supporting brief. The court held an evidentiary hearing, at which Escribano and his trial counsel both testified. The court dismissed Escribano's PCRA petition, and Escribano appealed.

Escribano raises the following issues on appeal:

1. Was trial counsel ineffective in failing to adequately discuss [Escribano's] appellate rights and file a direct appeal on his behalf?

2. Was trial counsel ineffective for failing to appeal and challenge the sufficiency of the evidence against [Escribano]?

3. Was trial counsel ineffective in failing to adequately argue and object to the trial court and a juvenile witness's counsel's colloquy regarding that witness's right against self-incrimination wherein they incorrectly believed that the right could only be waived by her mother/parent and failing to appeal?

4. Did trial counsel render ineffective assistance in erroneously advising Escribano concerning his right to testify by informing him that non-*crimen falsi* crimes could be introduced against him?

Escribano's Br. at 5 (answers below omitted).

This Court's review of an order denying PCRA relief is "limited to the findings of the PCRA court and the evidence of record, viewed in the light most

---

[3] The order denying the post-verdict motions purported to deny the "post-sentence motion filed on June 19, 2015." Order, 11/3/15. It also advised Escribano of his appellate rights. However, the motion filed on June 19, 2015, was a post-verdict motion, and not a post-sentence motion, as the court had not yet sentenced Escribano.

favorable to the prevailing party at the PCRA court level." ***Commonwealth v. Medina***, 92 A.3d 1210, 1214 (Pa.Super. 2014) (*en banc*). Questions of law are reviewed *de novo* and we affirm the factual findings of the PCRA court if the record supports them. ***Id***. at 1214-15.

Escribano's claims each go to the effectiveness of his trial counsel. A PCRA petitioner claiming ineffective assistance of trial counsel must prove the three prongs of the ***Strickland/Pierce***[4] test. Under ***Strickland/Pierce***, Escribano must show: "(1) his underlying claim is of arguable merit; (2) counsel's action or inaction lacked a reasonable strategic basis; and (3) but for counsel's conduct, there is a reasonable probability that the outcome of the proceedings would have been different." ***Commonwealth v. Rosado***, 150 A.3d 425, 429 (Pa. 2016). We presume counsel was effective and the petitioner bears the burden of proving otherwise. ***Commonwealth v. Lesko***, 15 A.3d 345, 374 (Pa. 2011).

## I. Duty to Consult

In his first issue, Escribano argues that trial counsel was ineffective for failing to discuss with him whether he should file an appeal. Escribano claims counsel had a duty to consult with him about an appeal because (1) there were nonfrivolous grounds for an appeal, and (2) Escribano preserved issues for appeal by filing post-verdict motions. Escribano asserts that counsel should

---

[4] ***Strickland v. Washington***, 466 U.S. 668 (1984); ***Commonwealth v. Pierce***, 527 A.2d 973 (Pa. 1987).

have discussed filing an appeal to challenge the sufficiency of the evidence and the court's treatment of R.D. as a potential witness.

"Where a defendant does not ask his attorney to file a direct appeal, counsel still may be held ineffective if he does not consult with his client about the client's appellate rights." **Commonwealth v. Markowitz**, 32 A.3d 706, 714 (Pa.Super. 2011) (citing **Roe v. Flores-Ortega**, 528 U.S. 470 (2000); **see also Commonwealth v. Carter**, 21 A.3d 680 (Pa.Super. 2011)). A constitutional duty to consult with a defendant about his appellate rights only arises where "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) . . . this particular defendant reasonably demonstrated to counsel that he was interested in appealing." **Markowitz**, 32 A.3d at 716 (quoting **Flores-Ortega**, 528 U.S. at 480). A defendant asserting such a claim must also prove that "but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." **Id.** (quoting **Flores-Ortega**, 528 U.S. at 484).

Here, Escribano does not argue that he demonstrated to counsel his interest in an appeal. Rather, he contends only that counsel had a duty to consult because a rational defendant would have wanted to appeal the sufficiency of the evidence and the trial court's treatment of R.D.

Escribano has failed to establish that there were nonfrivolous grounds for an appeal. Escribano argues the sufficiency issue was not frivolous because constructive possession cannot be proven by "a defendant's mere presence at a place where contraband is found" and because "the location and proximity

of an actor to the contraband alone is not conclusive of guilt." Escribano's Br. at 25. Escribano argues that he was in the rear passenger seat, while the gun was found under the front passenger seat. He points out that he did not own the car or have keys to the car, and his fingerprints were not found on the weapon. Escribano likens his case to **Commonwealth v. Hamm**, 447 A.2d 960 (Pa.Super. 1982), **Commonwealth v. Townsend**, 237 A.2d 192 (Pa. 1968), and **Commonwealth v. Parrish**, 191 A.3d 31, 32 (Pa.Super. 2018), in which the evidence was insufficient to prove constructive possession.

Constructive possession is an inference of possession that the Commonwealth may raise with evidence that the defendant had "conscious dominion" of an object. **Commonwealth v. Mudrick**, 507 A.2d 1212, 1213 (Pa. 1986). Conscious dominion is "the power to control the contraband and the intent to exercise that control." **Id.** More than one person may have constructive possession over contraband, so long as the contraband was in an area of "joint control and equal access." **Id.** at 1214.

Here, police found the firearm under the front passenger seat, and the plastic "shroud" in front of the passenger's seat made it difficult for the front passenger to pass the gun underneath the seat. While the muzzle of the gun was facing the front of the vehicle, the handle was pointing toward the rear, *i.e.*, where Escribano was sitting. Rosario admitted to having fired the gun, but stated he did so in response to threats made against both him and Escribano, and there was no testimony that Rosario put the gun under the seat of the car. Drawing all inferences in the Commonwealth's favor, the

position of the firearm and Rosario's statements strongly suggest that Escribano placed the firearm under the seat and thus had conscious dominion over it.

The cases Escribano cites afford him no relief, as in those cases there was a break in the chain of evidence the Commonwealth offered to establish constructive possession. In **Hamm**, the defendant was the driver of a car in which police found one gun on the floor by the front passenger seat that the driver could not have seen. 447 A.2d at 962. They also found a second gun under the front seat. **Id.** We held the evidence was insufficient to prove constructive possession of the firearms, because there was no evidence that the defendant was aware of either one. **Id.** In **Townsend**, the police found a firearm partially concealed under the front passenger seat of a vehicle with multiple occupants, but there was no evidence as to where the defendant had been seated. 237 A.2d at 193-95.

In **Parrish**, the police discovered a firearm in a bag on the front floor of a car, another protruding from under the front passenger seat into the front passenger compartment, bullets in the glove compartment, and a bulletproof vest in the trunk. 191 A.3d at 32-33. However, the defendant was in the back seat, and did not own the vehicle or have access to the glove compartment or trunk. **Id.** at 33-34, 38. Rather, he had merely accepted a ride home from a party, and witnesses testified he did not have a bag when he got in the car. **Id.** at 34, 37-38.

Here, in contrast, the evidence does not suffer from such a defect. The evidence here, viewed in the Commonwealth's favor, indicated that Escribano was sitting with the handle of the firearm close to his feet, could see it under the seat in front of him, knew Rosario had recently shot it in response to threats made against them, and had immediate access to it. These facts were sufficient to prove Escribano constructively possessed the firearm.

Escribano therefore cannot show that an appeal based on the sufficiency of the evidence to establish possession would have been nonfrivolous, and no duty to consult arose. *See Commonwealth v. Ousley*, 21 A.3d 1238, 1245 (Pa.Super. 2011) (finding no duty to consult where defendant's legality of sentencing claim lacked merit); *Commonwealth v. Bath*, 907 A.2d 619, 623–24 (Pa.Super. 2006) (finding defendant failed to show nonfrivolous grounds for appeal where only issues were sufficiency of evidence and issues that were not preserved at trial).

Regarding the trial court's handling of R.D.'s waiver of her Fifth Amendment privilege, Escribano argues the issue was not frivolous because the court erroneously told R.D. that her mother's consent was required for her to waive the privilege and this incorrect statement prevented R.D. from testifying. He further contends that the error was not harmless, as R.D.'s testimony would have exculpated him.

Because Escribano's trial counsel waived this issue, an appeal brought to obtain appellate review of it would have been frivolous. At trial, when the court, the prosecutor, and R.D.'s counsel all erroneously stated that R.D.'s

- 10 -

mother needed to consent to R.D.'s waiver of her Fifth Amendment rights, Escribano's counsel offered little argument in return, and never lodged an objection to the court's repetition of the statement or to its excusal of R.D. from the trial.

Although counsel initially attempted to assert that there was no requirement for a parental waiver because R.D. was not actively under investigation, she acknowledged that she had no legal support for her argument and ultimately acquiesced to a delay to obtain a waiver from R.D.'s mother.[5] When R.D.'s mother refused to consent, and the court, the prosecutor, and R.D.'s counsel all stated they believed R.D. could not legally testify without her mother's consent, and the court excused R.D. from the trial, Escribano's counsel did not object, which Escribano concedes. Although Escribano later attempted to raise the issue in a post-verdict motion, Escribano offered no authority or argument in the motion to support his position. Instead, he stated vaguely that the court should grant a new trial because it had "prohibited" testimony "by a ready and willing witness."

Given the dearth of objection and argument in the trial court, we find Escribano's trial counsel failed to preserve the issue. *See Commonwealth v. Sanchez*, 36 A.3d 24, 42 (Pa. 2011) (stating counsel must make contemporaneous objection to preserve issue). To the extent counsel's initial

---

[5] At the PCRA hearing, Escribano's trial counsel admitted she did not research the law concerning whether a parent has to consent to a juvenile witness's waiver of the Fifth Amendment, either prior to or following the court's ruling. N.T., 4/16/18, at 10, 22.

statement that parental consent was "for an investigation that might be ongoing" might be construed as a weak objection to the court's misstatement, counsel's subsequent acquiescence in requiring parental consent and in R.D.'s excusal from the trial amounted to waiver. An appeal of a waived issue would have been frivolous, and Escribano's counsel was therefore not ineffective for failing to discuss an appeal. **Bath**, 907 A.2d at 623-24.

Escribano additionally argues that a duty to consult arose because he filed a post-verdict motion to preserve his issues. Escribano relies on **Commonwealth v. Green**, 168 A.3d 173, 178 (Pa.Super. 2017), in which we stated a rational defendant would "want to appeal issues that counsel, through procedural maneuvering, has explicitly preserved." Escribano urges this court to consider his post-verdict motion as such "procedural maneuvering," and posits there "could be no reasonable basis for not consulting with your client about appealing where you expressly filed a motion to preserve and argue issues for an appeal." Escribano's Br. at 21.[6]

This case is easily distinguishable from **Green**. There, after the court denied Green's suppression motion, Green proceeded, on counsel's advice, to a stipulated trial in order to preserve the suppression issue for appeal, rather than taking a plea bargain. We held that after such "procedural maneuvering," a rational defendant would have wanted a direct appeal, and counsel had a

---

[6] The PCRA court did not address this portion of Escribano's argument, although Escribano raised it below. **See** Proposed Findings of Fact and Conclusions of Law, filed 6/20/18, at 9.

duty to consult with the defendant about taking an appeal. **_Green_**, 168 A.3d at 178-79. Here, Escribano's counsel did not take steps to set the scene for an appeal in which either the parental consent issue or the sufficiency of the evidence would be the key issue. Indeed, a post-verdict motion is unnecessary to preserve a sufficiency challenge. **_See_** Pa.R.Crim.P. 606(A)(7). And, as discussed above, Escribano's post-verdict motion did not adequately preserve the issue of the trial court's treatment of R.D., which required a timely, specific objection. **_Commonwealth v. Rosser_**, 135 A.3d 1077, 1086 (Pa.Super. 2016) (_en banc_). We cannot construe Escribano's post-verdict motion as the type of "procedural maneuvering" indicating that a rational defendant would wish to appeal. Escribano's first issue lacks merit.

## II. Sufficiency

Escribano argues his trial counsel was ineffective for failing to appeal the sufficiency of the evidence. However, Escribano does not argue he asked counsel to file an appeal on this issue. **_See Commonwealth v. Knighten_**, 742 A.2d 679, 682 (Pa.Super. 1999) (counsel not ineffective for failing to appeal where defendant did not request appeal). Furthermore, as discussed above, his sufficiency claim would not have succeeded on appeal. **_See_** Section I, _supra_. Escribano's second issue thus fails. **_Rosado_**, 150 A.3d at 429.

## III. R.D.

Escribano argues his trial counsel was ineffective for failing to object when the court required R.D.'s mother to consent to R.D.'s waiver of her Fifth Amendment rights. Escribano's Br. at 30. Escribano argues that pursuant to

*Commonwealth v. Williams*, 475 A.2d 1283 (Pa. 1984), parental consent is not required for a juvenile to waive the right to self-incrimination. He adds that the court's misstatements of law prevented R.D. from testifying; Escribano's trial counsel could have had no reasonable basis for failing to object; and R.D.'s resulting decision not to testify prejudiced Escribano, as she allegedly would have absolved him of guilt. In support, Escribano cites *In re N.M.*, 141 A.3d 539, 546 (Pa.Super. 2016).

In *Commonwealth v. Williams*, the Pennsylvania Supreme Court reviewed a juvenile's waiver of his *Miranda*[7] rights during custodial police interrogation. The Court "reject[ed] the application of a rebuttable presumption that a juvenile is incompetent to waive his constitutional rights without first having an opportunity to consult with an interested and informed adult." *Williams*, 475 A.2d at 1287. The Court held that the Commonwealth must instead prove that the juvenile's waiver is knowing, intelligent, and voluntary. *Id.* at 1288. The Court determined that "all questions involving the waiver of rights and the voluntariness of confessions made by juveniles" are to be answered by "application of the totality of circumstances analysis." *Id.*

More recently, in *In re N.M.*, this Court reviewed a trial court's decision to exclude a juvenile witness in order to prevent her from incriminating herself. 141 A.3d at 541. The juvenile witness had counsel who had explained her Fifth Amendment rights to her and the potential consequences of her

---

[7] *Miranda v. Arizona*, 384 U.S. 436 (1966).

testimony. *Id.* at 543. The defendant argued the court's exclusion of the witness violated his Sixth Amendment right to compulsory process. *Id.* at 542.

We observed there was no prior "binding precedent addressing the specific issue of whether a court can preclude a juvenile witness from waiving his or her Fifth Amendment rights to provide testimony on behalf of a defendant at trial." *Id.* at 544. Relying on cases such as *Williams* relating to *Miranda* waivers, we held that "a juvenile may waive his or her right against self-incrimination in the context of providing witness testimony if the waiver is knowing, intelligent, and voluntary," and that a totality of the circumstances test controls the analysis. *Id.* at 545-46. We identified relevant factors as including "the juvenile's youth, experience, comprehension, and the presence or absence of an interested adult . . . ." *Id.* at 546 (quoting *Williams*, 475 A.2d at 1288).

*In re N.M.* thus does not support the trial court's statement that parental consent was necessary for R.D. to waive her right to remain silent. However, we did not decide *In re N.M.* until after Escribano's trial, and thus neither Escribano's counsel nor the trial court had the benefit of its holding. Although *Williams* did hold, long before Escribano's trial, that parental consent was not required in the context of a *Miranda* waiver, that is not the same thing as a Fifth Amendment waiver. Although Escribano's counsel may have had some basis for an objection, we cannot say that counsel was ineffective for failing to foresee *In re N.M.* and make the objection. *See Commonwealth v. Gribble*, 863 A.2d 455, 464 (Pa. 2004) ("Counsel cannot

- 15 -

be deemed ineffective for failing to predict developments or changes in the law").

Furthermore, we conclude that Escribano did not sustain prejudice. R.D. stated on the record during the waiver colloquy that after consulting with her mother and counsel, she had decided not to testify. *See* PCRA Ct. Op. at 15 (finding "the juvenile witness spoke with counsel and her mother and decided to invoke her right against self-incrimination"). Even under *Williams* and *In re N.M.*, consultation with a parent is proper and a factor to consider in determining whether the waiver was knowing, intelligent, and voluntary. The PCRA court thus found that R.D. decided on her own accord not to testify, and this finding is supported by the record. Counsel's failure to object therefore did not prejudice Escribano, and we decline to find counsel ineffective.

### IV. Counsel's Advice Regarding Escribano's Testimony

In his final issue, Escribano argues his trial counsel was ineffective for advising him that if he testified, the Commonwealth could question him regarding his prior criminal history. According to Escribano, because his prior criminal history did not involve *crimen falsi* crimes, the Commonwealth could not raise it. Escribano's Br. at 35-36. Escribano points out that during the trial court's colloquy of Escribano, the court asked him if he had charges that "may come out on cross if [he was] to take the stand," and whether that was "part of [the] strategy that [he] and [trial counsel] discussed," to which Escribano responded affirmatively. *Id.* at 35 (quoting N.T., 6/10/15, at 126). He also argues that at the PCRA hearing, counsel admitted she did not receive notice

of the Commonwealth's intention to introduce any prior bad acts evidence, and did not discuss the concept of *crimen falsi* with Escribano. *Id.* at 35-37.

Escribano posits that his counsel could have had no reasonable basis for providing inaccurate legal information regarding the admissibility of his criminal history. *Id.* at 37. Escribano argues counsel's erroneous advice prejudiced him, as he would have testified if he had known his criminal history was inadmissible. *Id.* at 39 (citing **Commonwealth v. Walker**, 110 A.3d 1000 (Pa.Super. 2015)).

Evidence of a defendant's prior criminal offenses is ordinarily inadmissible at trial unless the defendant has taken the stand. In that event, the Commonwealth may attack his credibility by introducing evidence that he was convicted of a crime involving dishonesty (*i.e.*, *crimen falsi*). 42 Pa.C.S.A. § 5918(a); Pa.R.E. 609, comment; **Commonwealth v. Nieves**, 746 A.2d 1102, 1105 (Pa. 2000).[8] However, when a defendant is charged with violating Person Not to Possess, Use, Manufacture, Control, Sell, or Transfer Firearms, under 18 Pa.C.S.A. § 6105(a)(1), the Commonwealth must introduce evidence that the defendant was convicted of an enumerated offense. **See** 18 Pa.C.S.A. § 6105(b).

Here, the Commonwealth was required to introduce evidence of Escribano's criminal record as part of its case in chief, in order to prove

---

[8] Evidence of prior bad acts are also admissible for other limited purposes, regardless of whether the defendant testifies, provided the Commonwealth provides notice. Pa.R.E. 404(b).

- 17 -

Escribano had been convicted of an enumerated offense. At the same time, the Commonwealth could not introduce evidence of any convictions for unenumerated, non-*crimen falsi* offenses, solely to impeach Escribano's testimony.

At the PCRA hearing, Escribano's counsel testified to several concerns she had relating to Escribano's criminal history. First, counsel was concerned that the Commonwealth, in order to prove Escribano had been convicted of an enumerated offense, would introduce several of Escribano's prior felony convictions. She therefore entered into an agreement with the Commonwealth under which the prosecutor would introduce evidence of only one prior felony conviction. N.T. at 18, 33, 35, 42-44. Second, counsel was concerned about the effect Escribano's prior record would have on his sentence. *Id.* at 39-41. Finally, counsel was concerned that if Escribano testified, he might say something to "open the door" to the Commonwealth introducing additional felony convictions. *Id.* at 43-44. Counsel stated she discussed this concern with Escribano. *Id.* at 44.

However, counsel also testified that her main concern regarding Escribano's testimony was that the jury would not find him credible given that he was not from the area, did not have family in the area, and did not have a job in the area. *Id.* at 17, 32. Counsel testified that she advised Escribano as to her concerns regarding his believability in front of the jury. *Id.* at 42, 44. Counsel stated that by the time of trial, she was not concerned that the Commonwealth would introduce any evidence of Escribano's prior offenses in

response to his testimony, because there had already been a stipulation that the Commonwealth would only introduce evidence of a single conviction. ***Id.***

The PCRA court found trial counsel's testimony credible. The court determined that Escribano's trial counsel had "expressed concern over Escribano's taking the witness stand" due to Escribano's "lack of ties to Washington County and the effect on his credibility." PCRA Ct. Op. at 15. The court further found that because of the stipulation between the parties, counsel was aware that Escribano's "multiple felony convictions would not be an issue even if he were to testify." ***Id.*** The court found counsel "presented credible testimony regarding her trial strategy and . . . she did not convey erroneous advice to [Escribano] regarding his right to testify." ***Id.***

The findings of the PCRA court are adequately supported by the record. Per those findings, counsel did not advise Escribano it would not be in his best interest to testify because the Commonwealth would then be able to introduce multiple felony convictions. Rather, she did not think the jury would find Escribano to be credible. ***Cf. Nieves***, 746 A.2d at 1104-06 (granting new trial where trial counsel testified he advised defendant not to testify for fear he would be impeached by prior non-*crimen falsi* convictions). As all of Escribano's ineffectiveness claims fail, we affirm the order of the PCRA court denying relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/3/2020